## BAR ASSOCIATION OF THE CITY OF BOSTON *vs.* PETER J. CASEY.

·Suffolk.     March 27, 1907. — June 19, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Attorney at Law*, Disbarment.   *Disbarment Proceedings.   The Bar Association of the City of Boston.   Practice, Civil.   Pleading, Civil.*

At the hearing on a petition for the disbarment of an attorney at law, which alleged that the attorney had not observed his oath of office, had not continued to be and was not of good moral character, and had been guilty of deceit, malpractice, and other gross misconduct, the presiding judge found, on facts warranting the finding, that the respondent received from a client, then in jail, an assignment in writing of $800 in the hands of a clerk of the Superior Court, which was all the money that the client had, the consideration being stated in the assignment in the words "in consideration of services rendered and to be rendered by . . . [the respondent] . . . as my attorney," that, coincidently with the delivery of the assignment, the client gave the respondent in writing authority "to pay . . . [his former attorney] . . . all money due him, for services as my attorney, and charge the same to . . . [the client] . . ." and also gave the respondent an order on the clerk in favor of the former attorney; that "upon all the evidence . . . [the client] . . . authorized the respondent to receive the money from the clerk as his attorney and with the right to hold the money so collected as security for his fees "; that he, the presiding judge, had no reason for believing that the respondent did not act for his client with fidelity and reasonable skill, but that $250 was ample compensation for all the services rendered; that the respondent received $725 from the clerk and refused to deliver any part thereof to the client.   *Held*, that an order disbarring the respondent was warranted.

It is too late, at the hearing in this court of an appeal by the respondent from an order of the Superior Court disbarring him from practice as an attorney at law, for the first time to raise a question of variance between the pleadings and the proof.

The judge presiding at the hearing on a petition for the disbarment of an attorney at law filed a memorandum stating that he found that one B., when under indictment and in jail, in accordance with the advice of a fellow prisoner, sent for the respondent and that the respondent came to him and undertook his case for him; that the respondent procured from B. an assignment in writing of $800 in the hands of the clerk of the court formerly deposited as cash bail by B., stated to be "in consideration of services rendered and to be rendered by . . . [the respondent] . . . as my attorney," and also an order on the clerk to pay $75 to an attorney employed before the respondent in the same matter, that the money assigned to the respondent was all of B.'s property, and that the real understanding between B. and the respondent was that the respondent should take the money as B.'s attorney and hold it as security for his fees; that services rendered by the respondent were worth $250; that the respondent received $725 from the clerk and refused to deliver any of it to B.   The

petition alleged that the respondent had not observed the requirements of his oath, had not continued to be and was not of good moral character, and had been guilty of deceit, malpractice and other gross misconduct, and "more particularly," besides allegations which were found to be true by the presiding judge, it alleged that B., in jail and advised by a man unknown to him that counsel then employed by B. was "too young and inexperienced," employed the respondent as his counsel, and that the respondent discharged B.'s former counsel, that the respondent procured an assignment from B. of $800 on deposit with the clerk of the court, representing to him that the purpose of the assignment was to enable the respondent to receive the money and that he would immediately upon receipt of it pay it to B., that the respondent paid none of the money to B., but, without authority, paid $75 to the former attorney and retained $725, "falsely pretending that it was due him for legal services rendered and to be rendered by him," that "no sum, or a sum very much less than $725, was in fact due from" B. to the respondent. *Held*, that while the particulars in respect to the matters relied on were not stated in the petition with entire accuracy in all respects, the respondent was fully informed therein of the substance of the charge against him.

A petition for the disbarment of an attorney at law was presented to the Superior Court by The Bar Association of the City of Boston, incorporated by St. 1886, c. 22, for the purposes "of promoting social intercourse among its members, of insuring conformity to a high standard of professional duty, and of making the practice of the law efficient in the administration of justice," and the presiding judge in accordance with R. L. c. 165, § 44, appointed a member of the bar to prosecute the inquiry and proceedings. The respondent appeared, there was a full hearing on the merits, and the presiding judge filed a finding that the respondent fraudulently appropriated to his own use money of his client and ordered him disbarred absolutely. The respondent appealed. *Held*, that the petition properly was filed by The Bar Association of the City of Boston and that the proceedings were conducted properly ; and, further, that the question whether a less punishment would have met the demands of justice was not raised on the record.

PETITION for disbarment filed in the Superior Court for the county of Suffolk May 18, 1905.

After the petition was filed, Arthur D. Hill, a member of the bar, was "authorized to prosecute the inquiry and proceedings in relation to the petition," and it was ordered, in accordance with R. L. c. 165, § 44, "that the expenses and costs of the inquiry and proceedings be paid as in criminal proceedings in the Superior Court."

The petitioner was incorporated by St. 1886, c. 22, "for the purpose of promoting social intercourse among the members of the bar; of insuring conformity to a high standard of professional duty; and of making the practice of law efficient in the administration of justice."

The petition, after a paragraph alleging that the respondent

was admitted to practice as an attorney at law on June 30, 1883, and took the oath of office prescribed by law of such a case, alleged as follows:

"2. The respondent has not observed the requirements of his oath of office. He has not continued to be and is not of good moral character, and has been guilty of deceit, malpractice and other gross misconduct. Your petitioner more particularly alleges as follows: —

"3. On or about October 22, 1904, one John Bruce was committed to the Suffolk County Jail for lack of bail in the sum of $800, upon a charge of 'open and gross lewdness.' On or about October 24 he secured $800 in cash from a deposit which he then had in the Provident Institution for Savings in the Town of Boston and placed the same in the hands of a master in chancery, as security for his appearance in the Superior Court at Suffolk County, and was then set at liberty. The master in chancery duly transferred the $800 to the clerk of the Superior Criminal Court for Suffolk County. From the period commencing on or about October 22, 1904, until on or about February 23, 1905, Bruce had as his counsel Richard J. Lane. On or about February 23, 1905, while in the detention room at the Superior Criminal Court, he was approached by a man, unknown to him and to the petitioner, who asked him who his counsel was. Bruce informed the man that Mr. Lane was acting for him, and the man then told him that Mr. Lane was too young and inexperienced to properly try his case, and advised him to employ the respondent as his counsel. In consequence of the conversation, Bruce did employ the respondent, and the respondent afterwards discharged Lane from the case. Bruce was convicted on the charge on or about February 28, 1905, after a trial at which the respondent appeared as his counsel and was sentenced to ten months' imprisonment in the House of Correction at Deer Island. The bail of Bruce was increased to $1000 by the Superior Court on or about February 23, 1905, and, being then and ever since unable to give bail in that sum, Bruce was committed to the Suffolk County Jail. On or about February 25, the respondent obtained from Bruce an order upon the said clerk of the Superior Criminal Court to pay to the respondent the amount of the original bail

money, $800, then on deposit with the clerk. On or about February 28, 1905, the respondent obtained from Bruce another order or assignment of the money, and upon presentation of the orders to the clerk the money was paid over by him to the respondent. Prior to obtaining the orders the respondent represented to Bruce that the purpose of the orders was to enable the respondent to receive the money, and that he (the respondent) would immediately upon the receipt thereof pay over the money to Bruce and Bruce relied upon said representations and understood and believed that the respondent took the orders only for the purpose of obtaining the money from the clerk and immediately paying it over to him, Bruce. Bruce can neither read nor write, except to sign his name, and did not then and does not now understand the nature of the orders that he signed. The respondent never paid any of the money to Bruce, but, without any authority from Bruce, paid the sum of $75 to Mr. Lane for legal services rendered to Bruce, and, although often requested, has refused to pay over any part of the balance of $725 to Bruce, falsely pretending that the sum of $725 is due to him for legal services rendered and to be rendered by him. No sum, or a sum very much less than $725 was in fact due from the said Bruce to the respondent."

After a hearing before him, *Fox*, J., filed the following memorandum of findings :

" On October 22, 1904, John Bruce, a Russian Pole, was brought before the Municipal Court of Brighton on the charge of lewdness and ordered to recognize in the sum of $800 for his appearance in the Superior Court. This sum, through the agency of Richard J. Lane, Esquire, his attorney, he withdrew from the savings bank and deposited with the bail commissioner, and was thereupon released October 24, 1904. On November 1, 1904, Bruce was indicted upon the charge of open and gross lewdness and lascivious behavior. November 15th he was arraigned and pleaded not guilty, and, $800 being then in the hands of the clerk, he was released on his personal recognizance. Afterwards Bruce left the State to escape imprisonment. He was prevailed upon by his counsel to return, and February 23, 1905, he surrendered himself. Because of his several defaults his bail was increased to $1000. He was unable to raise the

additional $200 and was committed to jail.   February 24, while Bruce was in the detention room of the court house awaiting trial, he was advised by a fellow-prisoner to employ the respondent, and in consequence of this advice the respondent went to the Charles Street Jail and met Bruce for the first time February 25, 1905.

" Bruce has been in this country for twenty years, and has lived most of the time in this vicinity, and has been employed quite steadily as a laborer and gardener.   He can write his own name, but cannot read handwriting; he can read print with difficulty.   He had twice before been convicted of similar offences and fined.

" The respondent testified that in his interview with Bruce the latter informed him that $800 was deposited with the clerk and that he had already given an order for this sum to Mr. Lane, but that he would give the respondent this $800 if he could get it and if he would defend him ; that thereupon he went to the court house and found that the money was there, but that no order upon the fund had been filed, that he then prepared an order in his own favor, returned to the jail and obtained Bruce's signature to it.   Part of the respondent's cross-examination follows:

" Q.  Did it ever occur to you, Mr. Casey, to take up with Mr. Bruce the question whether there was not any way in which the case could be adjusted more cheaply with him and save him any part of this $800 ?   A.  Yes.

" Q.  When was that ?   A.  That was during consultation with Mr. Stevens and I was trying to suggest that the case might be disposed of for a fine, but Mr. Stevens would not listen to any fine on it.

" Q.  Did you ever tell Mr. Bruce in any manner or form that if this case was disposed of in any such way you would return him part of this money ?   A.  No, never.

" Q.  Was it your intention to return part of the money in that case ?   A.  No.

" Q.  Your idea was you were going to get the $800 for whatever you did in this case, whether it was much or little ? A.  Yes.

" Q.  You considered yourself justified in making that ar-

rangement from the fact that Mr. Bruce had proposed it and you had acceded to it? A. Yes, certainly.

"Q. You did not feel it was within the scope of your duty, so to speak, to protect him against himself in any way? A. I considered I was protecting him from the time I first saw him.

"Q. I mean in the matter of your charge you considered you were perfectly justified in acceding to any proposition he might make? A. Certainly; or if he had given me more, the same.

"The respondent further testified that when he came to file the order Monday afternoon, February 27, he found that an order had been already filed by Mr. Lane; that he then went back to Bruce, and said he must give him an assignment because the order was good for nothing, and that it was necessary to have an assignment in order to get the money; that on Tuesday morning, February 28, Mr. Lane came to him and asked him to get Bruce to sign the following paper: 'February 27. John P. Manning, clerk, Superior Court for the transaction of criminal business. Dear Sir: — Please reserve and pay to Richard J. Lane, attorney, $75 from the money now deposited in your hands and held for my appearance; the same due him for services to date.'

"The respondent testified that when Mr. Lane asked him to present this order to Bruce he replied, 'All right, I will present it to him, it is his matter'; and he took it to Bruce, and the latter said he had already paid $25 to Mr. Lane, and demurred to the $75; that he urged Bruce to sign, saying in part, 'That is his charge, and I don't think you can afford to have any conflict with Mr. Lane'; but that he would not sign; that on the same day he presented to Bruce a typewritten assignment running to himself, purporting to assign to him the moneys deposited with the clerk: 'in consideration of services rendered and to be rendered by P. J. Casey, as my attorney'; and also a typewritten order which was written on the lower half of the sheet containing the assignment. The order was as follows: 'Boston, February 28, 1905. I hereby authorize you to pay Richard J. Lane all money due him, for services as my attorney, and charge the same to me.'

"The respondent presented both the assignment and order to Bruce in the detention room on February 28, and he signed

them. The respondent said that he had further discussion with Bruce before he could get him to sign the order in favor of Mr. Lane for $75 ; that he said, ' You had better, Mr. Bruce, give me authority to fix up respectably with Mr. Lane '; and that finally Bruce said, ' Well, you use your own judgment and fix up with Mr. Lane and keep him easy.'

" On March 1, counsel having made known to the clerk their arrangement, the latter gave to Mr. Lane a check for $75 and to the respondent a check for $725, and the deposit was so distributed. February 28, Bruce was tried upon an agreed statement of the evidence prepared by the district attorney, which was submitted to the jury without argument, was found guilty and sentenced to the House of Correction for ten months. The respondent had filed a motion to quash and certain requests for rulings, and at his request sentence was stayed in order that the law questions might be taken up.

" On or before March 17, Sheriff Seavey, in consequence of the information he had received at the jail, saw the respondent, learned what had been done with the money and demanded that he should restore the money to Bruce. The respondent declined, saying that the money belonged to him as his fee. On March 17, Bruce filed a paper in court discharging counsel and waiving exceptions, and thereupon he was committed upon his sentence.

" It will be seen that the respondent even upon his own story has shown inadequate conception of his professional obligations. According to this story, Bruce when in jail, on the eve of trial, offered to give the respondent his entire fortune of $800 if he would undertake his defence, and the respondent accepted the offer when he could not have known that one-third of this sum would not be ample compensation for any services he could render. I am satisfied, however, that the story so far as it has shown an absolute transfer of the fund from Bruce to the respondent is not true. Not only is it contradicted by the other testimony in the case, but it is inconsistent with the respondent's testimony above referred to of what occurred between Mr. Lane and Bruce and himself when he procured from Bruce the order in favor of Lane for $75. When Bruce demurred to the payment of $75 to Lane the respondent did not say to him, ' This fund of $800 is mine because you gave it to me in our first inter-

view, and I can deal with it as I see fit.' Both parties knew that the $75 must be paid, if at all, out of the fund in the clerk's hands; and it is impossible to account for the discussion about the $75 between Bruce and respondent, or for the respondent's reply to Mr. Lane when he presented his order on the fund, — 'All right; I will present it to him; it is his matter,' — except on the theory that both the respondent and Bruce at that time understood that the money in the clerk's hands was Bruce's money.

" Upon all the evidence I find that Bruce authorized the respondent to receive the money from the clerk as his attorney and with the right to hold the money so collected as security for his fees, but the respondent in his interview with the sheriff and by his conduct since that time has indicated sufficiently his intention to appropriate the money to his own use. Respecting the conduct of the case I have no ground for believing that the respondent did not act for his client with fidelity and reasonable skill until his discharge ; but $250 would have been ample compensation for all the services rendered.

" I am constrained to hold, therefore, that the respondent has fraudulently appropriated to his own use a considerable sum of money belonging to his client. The fact that this client was in distress and helpless and looked to him alone for help and protection does not make that offence less grave nor the duty of the court less clear.

" It is ordered that the respondent, Peter J. Casey, be disbarred."

A formal order of disbarment was entered, the respondent appealed, and at his request the presiding judge reported the case for consideration and determination by this court " upon the question whether the order of disbarment was justified as a matter of law."

*T. W. Proctor,* for the respondent.

*A. D. Hill,* for the petitioner.

MORTON, J. This is a petition to disbar the respondent. The respondent had due notice of the filing of the petition, and after a hearing, at which he was present and was fully heard, the presiding judge made a finding that the respondent had fraudulently appropriated to his own use a considerable sum of

money belonging to his client, and ordered that he be disbarred. The respondent appealed, and the presiding judge reported the case for the determination of the full court upon the question whether the order of disbarment was justified as matter of law. All of the evidence is, in substance, before us and, after a careful examination of it, we are constrained to say that in our opinion there was evidence warranting the finding of the presiding judge, and that the entry of the decree of disbarment was, as matter of law, justified.

The petition alleges amongst other things that the respondent has not observed the requirements of his oath of office and " has not continued to be and is not of good moral character, and has been guilty of deceit, malpractice and other gross misconduct." It sets forth particularly the misappropriation of money belonging to one Bruce, a client of the respondent, as the ground for the petition. Bruce was arrested on a warrant issuing upon a complaint in the Municipal Court of Brighton for open and gross lewdness and was ordered to recognize in the sum of $800 pending consideration of the matter by the grand jury. He retained Richard J. Lane, Esquire, as his attorney and through his assistance the sum of $800 which Bruce had on deposit in the Provident Institution for Savings in Boston was withdrawn and deposited as security for Bruce's appearance and Bruce was thereupon released. He was afterwards indicted and the same security was given for his appearance — the money being deposited with the clerk. Subsequently he was defaulted and was ordered to recognize anew in the sum of $1,000, and not being able to recognize was committed to jail. While waiting for trial in the detention room of the Superior Criminal Court another prisoner recommended the respondent to him, and he sent for him and after a consultation the respondent consented to act for him, and Mr. Lane withdrew. Bruce told the respondent about the $800, and gave him an order for it on the clerk. On presenting the order the respondent found that there was a prior order on file in favor of Mr. Lane. Thereupon the respondent prepared an assignment of the fund from Bruce to himself which was executed and delivered to him by Bruce. The assignment recited that it was "in consideration of services rendered and to be rendered by P. J. Casey as my attorney." Bruce also at the

same time gave to the respondent written authority " to pay Mr. Lane all money due him, for services as my attorney, and charge the same to me " and also gave him an order to the clerk in Mr. Lane's favor.   The result was that the clerk paid Mr. Lane $75 for what was due him, and paid over the balance $725 to the respondent.   The government had previously waived its right to take advantage of Bruce's default and have a judgment of forfeiture entered if entitled to it, and the evidence would have warranted a finding, if material, that this was due, in part at least, to the efforts of the respondent.   A motion to quash the indictment was filed by the respondent and was overruled and the defendant Bruce excepted.   The case came on for trial on agreed facts prepared by the respondent and the district attorney.   Various rulings were asked for by the defendant which were refused and exceptions were taken.   The case was submitted to the jury without argument on the agreed facts, and they returned a verdict of guilty and the defendant was sentenced to the House of Correction for ten months.   Exceptions were filed by the defendant on the same day and a motion by the defendant to stay execution was also filed and allowed.   Subsequently, acting on other advice, Bruce discharged the respondent and waived his exceptions and the stay of execution was revoked and the sentence was ordered to take effect forthwith.   Bruce had been convicted twice before of similar offences and had been fined; and, according to the respondent's testimony, was afraid that if found guilty he might be sentenced to the State Prison, and was ready to give up and transfer to the respondent and did give up and transfer to him any claim that he might have to the $800 or any part thereof as compensation for services rendered and to be rendered in his behalf.   It appeared, or, at least, there was evidence warranting a finding, that the $800 was all that Bruce had.   A demand was made on the respondent on behalf of Bruce by the sheriff for a return of the money, which was refused by the respondent on the ground that the money belonged to him, and that he had received it as his fee under the assignment for services rendered and to be rendered to Bruce.   The presiding judge stated in his memorandum of findings that he had " no ground for believing that the respondent did not act for his client with fidelity and reasonable

skill until his discharge," and we see no reason to doubt the correctness of that conclusion. But he found that "$250 would have been ample compensation for all the services rendered," and that "upon all the evidence . . . Bruce authorized the respondent to receive the money from the clerk as his attorney and with the right to hold the money so collected as security for his fees, but the respondent in his interview with the sheriff and by his conduct since that time has indicated sufficiently his intention to appropriate the money to his own use," and he found, as already observed, that there had been a fraudulent conversion by the respondent of money belonging to his client. In regard to the respondent's account of the alleged transfer, he found that, so far as it tended to show an absolute transfer of the fund from Bruce to the respondent, it was not true. These findings were warranted, we think, by the evidence. Bruce was a witness at the hearing and, without going into his testimony in detail, it appeared, or could have been found from his account of the matter, that the respondent was to collect the money as his agent or attorney and account for it to him as such. The court could also properly find, as it did, that the respondent's own account of what took place between Bruce and himself in regard to the settlement with Mr. Lane was inconsistent with an absolute transfer of the fund to him by Bruce. The testimony of the detention officer who witnessed the assignment also tended to show that it was not an absolute transfer and there was nothing in the assignment itself which required a contrary conclusion. It is true that Bruce's testimony tended to contradict that of the detention officer as to what was said by him to the respondent when the assignment was executed, but the presiding judge may have thought that, in that particular, the testimony of the detention officer was more likely to be conformable to the truth than that of Bruce. The circumstances under which the alleged transfer took place may also have properly disposed the presiding judge to give less credit to the respondent's account of it than he would otherwise have done. It cannot be said therefore that the findings were not warranted by the evidence. There can be no doubt that the fraudulent misappropriation by the respondent of money belonging to his client constituted a violation of his oath of office, and rendered him guilty of malpractice and justified as

matter of law his disbarment. We do not mean to intimate by anything that we have said that Bruce could not legally have agreed with the respondent that he should have the $800 for such services as he might render, however much in excess that sum would be of a reasonable compensation for what was done. But the presiding judge found as a fact that no such agreement was entered into, but that the money was received by the respondent as attorney for Bruce, and that the respondent fraudulently appropriated to his own use his client's money, and it was on this ground that the disbarment was ordered.

The respondent contends that there was a variance between the allegations of the petition and the proof. No question, however, of variance seems to have been raised at the hearing, and it was, of course, too late to raise it for the first time at the argument of the exceptions in this court. But while the particulars in respect to the matter relied on were not stated with entire accuracy in all respects, it clearly appears, we think, that the respondent was fully informed as to the substance of the charge against him and had the fullest opportunity to present such facts and evidence bearing upon it as he desired. We discover nothing prejudicial to his rights in the way in which the proceedings were conducted. *Boston Bar Association* v. *Greenhood,* 168 Mass. 169. The petition was properly presented by the bar association. The question whether a judgment of absolute removal was required, or whether a less punishment would have met the demands of justice, is not before us.

*Order of disbarment affirmed.*