BAR ASSOCIATION OF THE CITY OF BOSTON *vs.* PETER J. CASEY.

Suffolk.    December 13, 1912. — February 4, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY & SHELDON, JJ.

*Attorney at Law.  Disbarment Proceedings.  Constitutional Law.*

The decision of this court in *Boston Bar Association* v. *Casey,* 211 Mass. 187, in regard to the nature of a proceeding for disbarment, the relation to such a petition of an incorporated bar association as the petitioner, and the qualification of the judges of the Superior Court to sit in the case as affected by their membership in such association, here was affirmed.

The decisions of this court in *Boston Bar Association* v. *Casey* at previous stages of that case as reported in 196 Mass. 100 and 204 Mass. 331, relating to the nature of the charges against the respondent and the questions whether upon the allegations of the petition and upon the evidence the order of disbarment was made legally and properly here were affirmed, and it also was decided that certain arguments urged by the respondent were disposed of by such previous decisions and were not open to him.

R. L. c. 165, § 44, authorizing the removal of an attorney at law for deceit, malpractice or other gross misconduct is constitutional.

In overruling exceptions of a respondent in a disbarment proceeding and affirming orders appealed from by him, where the order of disbarment had been made more than six and a half years previously upon a simple charge that the respondent wrongfully had kept for himself money belonging to his client, and the respondent, after appealing, had filed successively numerous motions, many of them of the most technical character, and where in disposing of the questions raised by him three previous decisions of this court had been made, it was said that the court were forced to the conclusion that the motions of the respondent then before them were made for the purpose of delay in a proceeding of a kind in which it was especially important that the truth should be ascertained and declared speedily.

HAMMOND, J.  The petition for the disbarment of the respondent alleged among other things that he "has not observed the require-

ments of his said oath of office" and "has not continued to be and is not of good moral character, and has been guilty of deceit, malpractice and other gross misconduct."

After a full hearing the judge found that the respondent had "fraudulently appropriated to his own use a considerable sum of money belonging to his client," and ordered that he be disbarred. The respondent appealed from the order of disbarment, which appeal seems not to have been prosecuted, but instead thereof, at his request, the presiding judge reported the case to this court upon the question "whether the order of disbarment was justified as a matter of law." Upon this report it was adjudged by this court that the findings were warranted by the evidence. In giving the opinion of the court Morton, J., further says: "There can be no doubt that the fraudulent misappropriation by the respondent of money belonging to his client constituted a violation of his oath of office, and rendered him guilty of malpractice and justified as matter of law his disbarment. We do not mean to intimate by anything that we have said that Bruce [the client] could not legally have agreed with the respondent that he should have the $800 for such services as he might render, however much in excess that sum would be of a reasonable compensation for what was done. But the presiding judge found as a fact that no such agreement was entered into, but that the money was received by the respondent as attorney for Bruce, and that the respondent fraudulently appropriated to his own use his client's money, and it was on this ground that the disbarment was ordered."

The opinion further proceeds as follows: "The respondent contends that there was a variance between the allegations of the petition and the proof. No question, however, of variance seems to have been raised at the hearing, and it was, of course, too late to raise it for the first time at the argument of the exceptions in this court. But while the particulars in respect to the matter relied on were not stated with entire accuracy in all· respects, it clearly appears, we think, that the respondent was fully informed as to the substance of the charge against him and had the fullest opportunity to present such facts and evidence bearing upon it as he desired. We discover nothing prejudicial to his rights in the way in which the proceedings were conducted. *Boston Bar Association* v. *Greenhood,* 168 Mass. 169. The petition was

properly presented by the bar association." *Boston Bar Association* v. *Casey*, 196 Mass. 100, 110, 111.

After the rescript affirming the order of disbarment was sent down, and before judgment, the respondent filed in the Superior Court (1) a motion that he be allowed "further time for filing a motion for a new trial" "for the reason that there has been a mistake in law in the finding of facts by the court and rendition therein and for the reason of newly discovered evidence," and "upon questions of law existing before the finding of the court against the respondent as well as since;" (2) a motion to "vacate the order or judgment of disbarment of the respondent" upon the grounds (*a*) that the judgment "was premature and without authority of law;" (*b*) that after the findings made by the court on March 10, 1896, there was no hearing upon the question of sentence or judgment before the same was made and ordered; (*c*) that there was a material variance between the allegations of the petition and the findings of the court against the respondent affecting the jurisdiction and authority of the court to make the findings without amendment to the petition; (*d*) that the "preliminary findings of fact and the general finding of fact adverse to the respondent cannot be identified with any one or all of the allegations in the petition;" (*e*) that the respondent was entitled as a matter of right to a separate and formal hearing on the question of the final sentence or judgment, which was not given him; (*f*) that the petitioner is not entitled "to any judgment of the court in the premises," nor (*g*) is it entitled "to any relief or remedy, general or special;" (*h*) that the court has made no findings on the charges concerning the want of moral character of the respondent and concerning the question whether the respondent obtained the money and assignment from Bruce by false representations, and (*i*) that the finding that the respondent intended to appropriate the money was based upon his conduct in his interview with the sheriff and since that time; (3) a motion for a new trial (*a*) because of a mistake of law made by the court in the decision of the case; (*b*) because the findings of the court were against the evidence and the weight of the evidence; (*c*) because of newly discovered evidence, and (*d*) because of "all reasons at law for which a new trial may be granted." In support of this last motion so far as respected the newly discovered evidence the respondent

filed a writing entitled "Partial specification under the third ground of the motion for a new trial," specifying twenty distinct parts of the evidence which he expected to show to be erroneous, of which some were entirely immaterial to the issue tried and the others had only the most remote bearing upon it; he also filed several affidavits of the persons whom he desired to call as witnesses and his own affidavit of four pages as printed in the record before us. While many of the matters contained in his affidavit have only the most remote bearing, if any, upon the real merits of the case, it does contain some statements showing the work done by him as attorney for Bruce and bearing upon the value of his services as such, and also the statement that Bruce, well understanding the meaning and effect of the written assignment made by him to the respondent, intended thereby "that the whole $800 · should become absolutely the property of the respondent if the respondent could recover the same from the Commonwealth."

The respondent further filed a motion to amend the record so that it would show the respective days of the week of certain days of the month therein stated, and also would show that there "was no hearing before the court upon the question of sentence, or judgment, before the. same was made and ordered," and that "no notice, verbal or in writing, was ever given to the respondent, or his attorney, that there would be any hearing" on this question. This motion was accompanied by an affidavit of the respondent in which he says that he never has received from any source "any notice . . . of any hearing to be had upon the judgment of disbarment by the court in said case, or any notice from the court itself; and that in fact . . . [he never has] . . . had a hearing or been heard upon the question of . . . [his] . . . disbarment."

All these four motions were heard by *Fox,* J., before whom the case originally was heard and by whom was made the order for disbarment; and on September 16, 1908, they were all denied. In denying the motions the judge placed on the record the following memorandum:

"Memorandum on Motion of the Respondent to Vacate and Arrest Judgment, Motion to Amend Record, Motion for New Trial and Motion to Extend the Time for Filing a Motion for New Trial.

"The respondent was given the fullest opportunity to be heard,

and was heard by counsel both upon the question what findings were warranted by the evidence, and what judgment should be entered upon the facts found, before the formal order for disbarment was entered. From that order he duly appealed.

"A Commissioner had been appointed to take the testimony, but upon the representation of the respondent's counsel that he was without means to take the case to the Supreme Judicial Court I ordered the case to be reported at the expense of the county of Suffolk. The report was agreed upon by counsel, and respondent had the opportunity of taking to the Supreme Judicial Court every question of fact and every question of law which he cared to argue.

"The motion for a new trial upon the ground of newly discovered evidence I deny, partly upon the ground that the conclusion to which I came as to the facts was based largely upon the testimony of the respondent himself. All the motions are denied."

To the order overruling the motion for a new trial the respondent filed exceptions which were disallowed as contrary to the truth as appears from the certificate of the judge indorsed thereon, and except as hereinafter stated, nothing further appears to have been done about these exceptions. The respondent also filed separate appeals from the denial of each of these four motions. Subsequently he filed another motion to extend the record which embraced some of the matters in the former motion to·extend the record, and in addition some other things rendered needless by the action of the court. This motion, although supported by an affidavit of the respondent, was denied by the court on the ground that there was "no occasion for amending the record as requested."

The respondent further filed another motion to amend the record by striking out and expunging therefrom the "alleged formal judgment," being the order of April 9, 1906, that he be removed from the bar, "for the reasons that the same is a nullity; unauthorized in law as to the form, substance and rendition thereof; that it never was, is not and cannot be of any validity as a judgment; and was never regarded or treated by the respondent, or his attorney, in any other way than [as] a nullity." This motion was denied and the respondent appealed; and on the same day he appealed also from the order disallowing his exceptions on the motion for a new trial hereinbefore mentioned.

Meanwhile a motion to dismiss the appeals and exceptions for want of prosecution had been made by the petitioner, upon which the court made an order that the appeals should be entered in this court on or before October 1, 1909, from which order the respondent appealed.

In this fairly complicated condition of things having but little, if any, bearing upon the real cause for disbarment, the case came to this court. 204 Mass. 331. Knowlton, C. J., there uses the following language (p. 333): "The case now comes before us upon appeals, which . . . are seven in number, as follows;" and he names them as they are hereinbefore recited. After dealing in detail with the several appeals, the court adjudged that "the orders appealed from are all affirmed, and judgment is to be entered in accordance with the order of April 9, 1906," which was the order of disbarment.

The rescript went down on January 7, 1910. On February 4, 1910, the respondent moved in arrest of judgment "for cause which affects the jurisdiction of the court but is not apparent of record; and which has not been heretofore waived, abandoned or adjudicated in this case; and which renders and makes all orders, decrees and judgments herein without jurisdiction, of no effect, illegal and absolutely null and void." It alleges in substance that every one of the judges of the Superior Court who made any order thereon was a member of the petitioner association and thereby disqualified by interest to act as judge in the case. For the same reason he filed a motion to vacate all the prior orders in the case. Upon a hearing upon these two motions it appeared that the several judges named in the motions were honorary members of the petitioner association, but the court ruled that they were not thereby disqualified. Both motions were denied and the respondent appealed.

At the hearing upon this motion to set aside and vacate all orders, etc., the respondent took certain exceptions to the rulings and refusals to rule, which exceptions were duly allowed. Upon these two appeals and this bill of exceptions, in each of which was raised substantially the same question, namely, whether the judges, being honorary members of the petitioner association, were thereby disqualified to act, the case for the third time came to this court (211 Mass. 187), and the question was adjudged in the negative;

and accordingly the exceptions were overruled and the orders denying the motions were affirmed.

This rescript went down February 29, 1912, and on March 1, 1912, the respondent filed a motion in arrest of judgment; on April 1, 1912, a motion to set aside findings and also a second motion in arrest of judgment. Each of these three motions was overruled on April 3, 1912, and from the decision in each the respondent appealed. He also filed exceptions to the "respective denials and overrulings," which exceptions were duly allowed. The case is now before us, for the fourth time, on these appeals, and this bill of exceptions.

The first motion in arrest of judgment contains five specific grounds beside the last which is thus stated: "And for every other ground, reason or cause at law for which said judgment may be arrested." The motion to set aside the findings specifies eleven particular grounds therefor, and the second motion in arrest of judgment names four specific grounds.

It is unnecessary to name in detail these various grounds for the motions. Most of the questions raised by them have been passed upon and settled in previous stages of the case, or could have been raised at the original hearing, and are not now open to the respondent. Perhaps the way fairest to him is to notice and consider specifically in detail those argued upon his brief.

It is first contended on the brief that the Bar Association is an actual party in the case, the only party plaintiff in fact in the case, and as such the sole author of the charges against the respondent, and that to hold that the association is not a party plaintiff "is against the express avowals and declarations of the corporation itself as appears by its special acts of record [and] its Constitution." In support of this contention various parts of the record of the court proceedings including extracts from the opinion of this court, and also extracts from the constitution and by-laws of the association are cited.

And, following out this conception of the nature of the proceeding, the respondent further contends that inasmuch as the charges concern his moral character and reputation, "the dearest of his inalienable rights," he has a constitutional right to a trial by jury, and that "the court could not conceivably of its own motion disbar an attorney on this charge [want of moral char-

acter], and in the history of jurisprudence, except in the present case, it never has been done." He further contends that the judge who heard the case was by reason of membership in the association disqualified to act; that summary jurisdiction of the court cannot be exercised on charges of bad character as a citizen; that the findings of the trial judge are not broad enough to cover the grounds set out in R. L. c. 165, § 44, under which, as the petitioner contends, it has been adjudicated that this petition was brought (see the report of the original hearing); that the subsequent particulars set out in the third paragraph of the petition even if true, "could have no possible bearing on the general charges against the respondent's moral character; neither could they have reference to all three general charges, deceit, malpractice and gross misconduct." Upon these various contentions the respondent argues in his brief at considerable length.

These contentions, so far as they relate to the nature of the proceeding, the relation of the association to it and the qualification of the judges of the Superior Court to act as affected by their membership in the association, were fully considered in 211 Mass. 187. We rest satisfied with the decision at that time reached. It is plain that there is nothing in the contentions so far as they relate to these matters.

The contentions so far as they relate to the nature of the charges and to the questions whether upon the allegations of the petition and upon the evidence the order of disbarment was legally and properly made, have been previously disposed of in the former adjudications of this court. 196 Mass. 100; 204 Mass. 331.

The respondent further argues that even if found guilty he was entitled to be heard upon the question of the sentence, whether it should be disbarment or only suspension for a certain time, or any other form of discipline; that he never has been heard, and also that he never has been heard upon the particular kind of variance upon which he relies. Upon this latter contention the respondent argues at great length. But it is plain that he has been concluded by our former decisions from again pressing these points. 196 Mass. 100. See the first motion (filed July 1, 1907) and 204 Mass. 331. They must be regarded as not further open to the respondent.

The latter part of the brief is devoted to an argument in favor

of the proposition that the court could not properly disbar him upon the evidence. This point, as has before been said, has been decided and is no longer open to him.

Since the case was submitted to this court this time upon a brief of the respondent, he has been allowed to file a supplemental brief. It is unnecessary to go over it in detail. So far as it touches upon matters covered by the first brief it calls for no additional remarks; so far as it covers other matters they are either immaterial or not now open to the respondent.

Assuming, without deciding, that the question of the constitutionality of R. L. c. 165, § 44, is now open to the respondent, it is sufficient to say that there is nothing in the point. The statute is not unconstitutional.

There is nothing contained in the points not argued upon the brief which calls for further discussion.

It follows that the motions were rightly overruled; and the orders appealed from are all affirmed.

Ordinarily we should stop here; but this record is of so extraordinary a nature that we feel constrained to call attention to it. We therefore have gone over it in considerable detail. The act of the respondent upon which these proceedings are based was not of a complicated nature, but was very simple. While he stood in the relation of an attorney to Bruce he received from him an order for $800, being the sum Bruce had deposited as cash bail and then in the hands of the court. The main question at the original hearing was whether, as the respondent contended, the intention of Bruce was that the respondent should keep the money as absolutely his own, or whether, as the prosecution contended, his intention was that the respondent should hold it as security for his fees in the case and pay back to Bruce the balance after paying the sum due Lane, another attorney, for services. What the respondent did is not in dispute. He took the $800, paid $75 to Lane, and kept the balance as absolutely his property. If the respondent's contention as to Bruce's intention is the truth, then he did nothing wrong. If the contention of the prosecution is the truth, then the respondent could keep only such sum (after paying Lane's bill) as would reasonably compensate him, which sum the court fixed at $250.

At the hearing both the respondent and Bruce testified, and on

each side were other witnesses. The trial judge filed a memorandum of findings. After reciting somewhat in detail the contention and evidence of the respondent he proceeds as follows: "It will be seen that the respondent, even upon his own story, has shown inadequate conception of his professional obligations. According to this story Bruce when in jail on the eve of trial offered to give to the respondent his entire fortune of $800 if he would undertake his defense, and the respondent accepted the offer when he could not have known that one third of this sum would not be ample compensation for any service he could render. I am satisfied, however, that the story so far as it shows an absolute transfer of the fund from Bruce to the respondent is not true. Not only is it contradicted by the other testimony in the case, but it is inconsistent with the respondent's testimony above referred to of what occurred between Lane and Bruce and himself when he procured from Bruce the order in favor of Lane for $75. . . . Upon all the evidence I find that Bruce authorized the respondent to receive the money from the clerk as his attorney and with the right to hold the money so collected as security for his fees, but the respondent in his interview with the sheriff, and by his conduct since that time, has indicated sufficiently his intention to appropriate the money to his own use. Respecting the conduct of the case I have no ground for believing that the respondent did not act for his client with fidelity and reasonable skill until his discharge. But $250 would have been ample compensation for all the services rendered. I am constrained to hold, therefore, that the respondent has fraudulently appropriated to his own use a considerable sum of money belonging to his client. The fact that this client was in distress and helpless, and looked to him alone for help and protection, does not make the offense less grave, nor the duty of the court less clear."

This memorandum of findings was filed March 10, 1906, and on April 9, 1906, more than six years ago, the order for disbarment followed.

The act complained of was simple, the decision clear. The trial judge found that the contention of the respondent was not even consistent with his own testimony, and was not in accordance with the actual facts. Upon the entry of the disbarment

order there was begun by the respondent the remarkable course of procedure partially hereinbefore outlined. Of the various motions filed by him many are of the most technical nature, having no reference direct or indirect to the merits of the case. Many relate to questions not open to him at the time; many had been decided at a former stage of the case, and the most of them were as applied to the case frivolous when made. These remarks do not apply to the point raised by the respondent as to the competency of the judges as affected by their membership in the Bar Association.

By his course of procedure the respondent has managed to postpone a final decree for more than six and one half years, and still stands as a member of the bar.

Even after making all due allowance for the importance to him, as well as to the community, of the thing at stake, involving as it does his removal from the bar with all which that implies, still it is inconceivable that a person in the profession of the law could have believed as to many of the questions that there was any chance of success. A reading of the record forces upon the reader the conclusion that they were made for delay. And particularly is this true of the three motions now before us.

For obvious reasons it is especially important in cases of this kind, involving as they do the fitness of an individual to hold himself out as a legal and confidential adviser and to act as such, that the truth should be speedily ascertained and declared, and prompt action taken to clear from suspicion the innocent and to discipline the guilty.

*Exceptions overruled.*
*Orders appealed from affirmed.*

P. J. *Casey, pro se,* submitted a brief.

No argument or brief was presented for the petitioner.