JESSIE A. KNOWLTON, executrix, *vs.* THE FOURTH–ATLANTIC NATIONAL BANK OF BOSTON.

Suffolk.    March 5, 6, 1930. — May 27, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* What constitutes, Validity, Performance and breach. *Equity Jurisdiction,* To enforce trust, Accounting. *Equity Pleading and Practice,* Master: findings; Appeal. *Mortgage,* Equitable. *Trust. Law of the Case.*

A master in reports in a suit in equity against a bank which previously were before this court with an appeal by the defendant from a final decree, had incorporated certain evidence as directed by an interlocutory decree. The defendant on that appeal had waived the including of such evidence in the record. A rescript from this court on such appeal reversed the decree and directed the master to admit certain evidence which he had excluded, and an interlocutory decree again referring the suit to the master after such rescript ordered him to consider both such new evidence and all evidence previously received by him. He did so and so stated in a report. Upon an appeal by the defendant from a final decree entered after such report of the master, there was printed in the record before this court all the evidence which the master had included in his earlier reports as well as that included in his final report after rescript; and it was *held,* that, although the consent previously given to have the case reported without evidence was a waiver by the defendant of a contention that there was not sufficient evidence to warrant the master's findings in the reports before the first appeal, in the circumstances the question of the propriety of the master's findings in his last report must be tested upon all the evidence which was before this court in the record upon the last appeal.

A suit in equity in the Superior Court to enforce the provisions of a trust in the nature of an equitable mortgage created by contract between the plaintiff's testator and the defendant was referred to a master and, upon a report by a trial judge after a decree founded on reports by the master, the decree was reversed by this court by reason of an erroneous ruling by the master excluding certain evidence, and was again referred to the master by the Superior Court with direc-

tions to hear such evidence. A supplemental report by the master stated that, after hearing such evidence and considering it with all other evidence previously heard by him, he found the alleged contract to exist. The evidence on that issue was reported, was in part oral and was conflicting. An exception by the defendant to the finding by the master was overruled, and the defendant appealed. After an examination of such evidence, it was *held*, that it amply warranted the finding made by the master.

Upon an appeal by the defendant from a final decree for the plaintiff after the rehearing by the master above described, the defendant contended that it had not been guilty of the breach of trust found by the master because it had acted in good faith with sound business judgment in appointing an agent to carry out the trust, and that it should not be held liable for negligence or wrongdoing of such agent. All the evidence on that issue was not reported. The findings of the master thereon were in the record when the suit previously was before this court, and the defendant then made the contention that there was no breach of trust, and this court overruled that contention. *Held*, that the defendant was bound by the former decision by this court.

In the suit above described it was *held*, that the defendant could not be relieved from its obligations as a trustee by relying upon the assurance from its agent or attorney that no trust was created or by relying upon the denial of its agency by a corporation it had entrusted with the trust property.

While, in the suit above described, the plaintiff had the burden of proving that a trust relationship as to the property existed between the plaintiff's testator and the defendant, that being established, the defendant had the burden of proving that it had discharged its duties as trustee with reasonable skill, prudence and judgment, including the duty to account to the beneficiary at reasonable times and to exercise a proper supervision over the activities of its agent or agents appointed to deal with the trust property according to the contract between the defendant and the plaintiff's testator.

Upon the record in the suit above described, it was *held*, that a conclusion of the master and of the trial judge to the effect that the defendant had failed to show that it had performed its duty as trustee could not be said to be unjustified.

As was held in a decree reported in 264 Mass. 181, when the suit above described previously was before this court, the trust created by the contract between the defendant and the plaintiff's testator was in the nature of an equitable mortgage, and required no consideration to support it.

The defendant in the suit above described could not be relieved from its obligation to account for property delivered to it and for which it assumed responsibility on the ground that the terms of the contract creating the trust were uncertain.

In the suit above described, the allegations of the bill relating to the contract and to a demand for an accounting and to a refusal to account, being proved, set out a cause for relief in equity against the defend-

ant and warranted a decree directing the defendant to pay a certain amount of money to the plaintiff, and that execution issue therefor.

When the suit above described previously was before this court, a rescript issued directing that it be dismissed as to all defendants excepting one. Against the remaining defendant, a final decree was entered, after further proceedings in accordance with the rescript, and the defendant appealed. *Held*, that the conclusions reached in the former decision by this court as to the defendants as to whom the suit was dismissed could not be reopened.

BILL IN EQUITY, filed in the Superior Court on October 31, 1921, by Montague Chamberlain and, after his death, prosecuted by the executrix of his will, against The Fourth-Atlantic National Bank of Boston, Charles H. Breck, Breck-Robinson Nursery Company, and Joseph Breck and Sons Corporation.

The suit previously was before this court as stated in the opinion, and a decision was rendered which is reported in 264 Mass. 181. Proceedings in the Superior Court after rescript, and decrees entered by order of *Lummus*, J., are described in the opinion. The final decree directed that the defendant, The Fourth-Atlantic National Bank of Boston, pay to the plaintiff the sum of $9,798.89, together with interest from the thirty-first day of October, 1921, amounting to $4,772.05, a total of $14,570.94, and that the defendant, The Fourth-Atlantic National Bank of Boston, pay to the plaintiff costs amounting to $242.30 and that execution issue for said sums against the defendant, The Fourth-Atlantic National Bank of Boston. The defendant The Fourth-Atlantic National Bank of Boston appealed from such decrees.

While the suit was pending in the Superior Court previous to its coming to this court on the first appeal, an interlocutory decree recommitting the case to the master was entered on December 26, 1924, requiring the master to make certain findings as to the contract which he found was made between Chamberlain and the defendant bank and to "report so much of the evidence in the case as bears upon" such matters. The master made a supplemental report on April 9, 1925, accordingly, stating that he felt "compelled to report a considerable portion of the whole evidence," and

"in order to avoid rewriting this evidence," he attached "a schedule indicating the evidence considered" and filed "as an exhibit the original volumes of testimony with the portions indicated marked in red pencil in the margin," and also numerous exhibits. After rescript from this court on the first appeal, the suit was recommitted to the master, ordering him "to hear a reargument of the said cause on all the testimony in the case, including that which he heard upon his first reference and that which he hears under the reference in question, and after such reargument to report to the court as soon as may be his findings of facts with regard to the question of the liability of the defendant to the plaintiff; also to report to the court the evidence which he receives under this reference." The master thereafter filed a report stating as follows: "In accordance with the orders of said decrees I have heard the testimony of James A. Bailey, Esquire, offered by the defendant, a copy of which is attached . . . . Thereafter I heard a thorough reargument of the case on the whole testimony upon the question of liability and present herewith my conclusions thereon.

"Because of the circumstances under which the attached testimony of Mr. Bailey was taken, I have first considered it by itself, to ascertain its effect upon my mind as to the credibility of the plaintiff's testate Chamberlain, and I have secondly considered it in relation to and as a part of the whole testimony in the case.

"On the first aspect I am satisfied that Mr. Chamberlain on more than one occasion did talk with Mr. Bailey concerning some arrangement he had with Mr. Hallett and the bank looking to the ultimate payment of the debt to the bank and his retention of the ownership of his bulbs. Recalling Mr. Chamberlain as I saw him and listened to him during the long and searching direct and cross-examination to which he was subjected, and considering carefully on the one hand his advanced age (over eighty) and on the other his very considerable interest in the outcome of the action, still I do not feel that such discrepancies as appear between his recital of events in which he was an active participant

and that of Mr. Bailey whose interest in the same events was at best casual as a part of an attorney's participation eight years before in an uncontested suit at law, were such, in and of themselves, as to justify me in repudiating Mr. Chamberlain's testimony on the real issue in the case, namely. the question of whether he did in fact make the contract upon which he relies.

"Proceeding then to consider Mr. Bailey's testimony as a part of the whole testimony in the case and as if originally taken, the full reargument and discussion of the testimony and my former reports, together with my further study and consideration of them, bearing in mind as I must the appearance and character of the witnesses, not alone Chamberlain, but also Hallett and Breck, as disclosed to me during the hearings, has strengthened my conviction that the findings of fact bearing upon the question of liability as they appeared in my former report filed July 5, 1924, and my supplemental report filed May 7, 1926, were correct, and I therefore adopt them as my findings of fact upon the present reference."

Printed with the record before this court on the present appeals was testimony of Mr. James A. Bailey, in full, given after the hearing following rescript in this court above described; and many pages, but not the whole, of the testimony and exhibits which were referred to by the master in his report filed on April 9, 1925, as above stated, taken by the master in hearings before him beginning on July 13, 1922, and concluding before the master's first report, were filed.

R. C. Murchie, (H. R. Bailey with him,) for the defendant.

R. B. Owen, (E. R. Anderson with him,) for the plaintiff.

SANDERSON, J. This suit was first brought to this court by report at the request of all parties upon the pleadings, three reports of the master, exceptions thereto, and appeals from interlocutory decrees and orders, "Such final decree is to be entered as the plaintiff upon the record is entitled to." By the rescript in that case the interlocutory decree overruling the exceptions of all parties and confirming the report was affirmed in all respects except as to the defend-

ant's exception numbered two, and as to that the decree was reversed. The bill was ordered to be dismissed with costs as to all defendants other than The Fourth-Atlantic National Bank, and as to it the case was remanded to the Superior Court for further proceedings not inconsistent with the opinion. 264 Mass. 181. The exception referred to was to the exclusion of testimony of Chamberlain's attorney relating to statements made to him by his client. After rescript two decrees were entered, the first dismissing the bill as against the defendants Breck individually, Breck-Robinson Nursery Company and Joseph Breck and Sons' Corporation, and the second ordering that the case be recommitted to the master to hear the testimony previously excluded and to report his findings respecting the liability of the defendant and also to report the evidence received on this last recommittal. It was further decreed that if "the Fourth-Atlantic National Bank, is liable to the plaintiff, then the master's account of the damages already found by him in his former report shall stand." The bank, which will be referred to as the defendant, appealed from both of these decrees.

The master, after hearing testimony in compliance with the order of recommittal and considering it by itself and also in connection with all of the evidence in the case, reaffirmed the findings made by him in his earlier report and adopted them as his findings. To this report the defendant saved two exceptions, (1) that upon all the evidence the findings of the master are incorrect, and (2) that upon all the evidence the master should have found that the plaintiff Chamberlain and the executrix of his will have failed to show that any contract was entered into between Chamberlain and the defendant. These exceptions were overruled and a final decree entered in favor of the plaintiff. From both of these decrees the defendant appealed.

The master in one of his earlier reports made specific findings as to the contract between Chamberlain and the defendant, and in accordance with the order of court reported so much of the evidence as bore on those matters. But the case first came to this court in accordance with the agreement of all parties without this evidence. One of the

exceptions then saved by the defendant and appearing in the previous record was to the refusal of the master to find that no contract was entered into between Chamberlain and the defendant. The consent of the defendant to have the case reported without the evidence on that issue was a waiver of the contention that there was no sufficient evidence of a contract between Chamberlain and the bank in so far as it depended on the evidence made a part of the master's earlier report. *Tilson* v. *Crane Brook Co.* 269 Mass. 493, 495. But now, in view of the fact that the master has heard additional evidence to be weighed with that previously considered by him, the question will be decided upon the evidence before the court in the present record although the additional evidence bore only on the weight to be given to Chamberlain's testimony. See *Malden & Melrose Gas Light Co.* v. *Chandler*, 211 Mass. 226, 227. The findings of the master are not to be set aside unless plainly wrong. When he has heard oral testimony his decision as to the weight to be given to it is seldom disturbed. *Parsons* v. *Parsons*, 230 Mass. 544, 552.

We have examined all of the evidence in the present record and are of opinion that it amply warranted the finding that a contract was made between Chamberlain and the defendant acting through its authorized agent in the terms set forth in 264 Mass. at pages 189 and 190. No good purpose would be served by reciting or summarizing this evidence. The contradictions in testimony and the other matters to which our attention has been directed by the defendant do not show that the master was wrong in his conclusion on this issue or justify us in reaching a different conclusion. Under the contract made, the defendant "held the legal title to the bulbs upon a trust for the purpose of liquidating the debt of the plaintiff to it, of reimbursing itself for the expenses of the plan, and of eventually returning the bulbs unsold and any surplus money realized from the sale of bulbs." 264 Mass. 181, 194.

The defendant further contends that if a trust was created it is not liable for any breach thereof; that it acted in good faith with sound business judgment in appointing an agent

to cultivate and dispose of the bulbs, and that it should not be held liable for negligence or wrongdoing of such agent. On this phase of the case all the evidence does not purport to be reported. All of the facts found by the master bearing upon this issue were before the court when its decision in 264 Mass. was rendered. That decision is binding on the parties on all issues then passed upon. *Boston Bar Association* v. *Casey,* 213 Mass. 549, 555. *Taylor* v. *Pierce Brothers, Ltd.* 220 Mass. 254, 255. The defendant at the former hearing made the contention that there was no breach of trust. The bill was for an accounting, and the answer of the defendant admitted that a demand for an accounting was made upon it by Chamberlain and that it had denied his right thereto. Such a repudiation of its obligation was a breach of trust. The master found that in 1916 and subsequent years the number of bulbs constantly decreased; that the evidence did not account for this shortage by sales or by adverse soil or by weather conditions. He states: ". . . it [is] difficult to account for the large decrease in bulbs except upon the theory that there was some careless or improper handling or cultivation, but I cannot from the evidence specify its nature." No attempt was made by the Breck-Robinson Nursery Company, to which the bulbs had been delivered, to segregate them in planting or cultivating, or to keep separate the receipts from their sale. These, with other bulbs, were carried in an account called the "Gladioli Account" through 1920, when Breck, who was found to be acting for the defendant throughout, directed that this account be closed. The defendant does not now offer to account for the bulbs or their proceeds or value. It cannot be relieved from its obligations as a trustee by relying upon the assurance from its agent or attorney that no trust was created or by relying upon the denial of its agency by the corporation entrusted with the bulbs. The plaintiff had the burden of proving that a trust relationship as to the bulbs existed between Chamberlain and the defendant, but, that being established, the defendant had the burden of proving that it had discharged its duties as trustee with reasonable skill, prudence and judgment, including the duty to account to the beneficiary at reasonable

times and to exercise a proper supervision over the activities of its agent or agents appointed to cultivate, care for and market the bulbs. See *Little* v. *Phipps,* 208 Mass. 331; *Ashley* v. *Winkley,* 209 Mass. 509, 525; *Boston Safe Deposit & Trust Co.* v. *Wall,* 254 Mass. 464, 469. It does not appear that the defendant at any time since the trust was established in 1915 has sought to regain possession of the bulbs or to have an accounting from its agent entrusted with their possession, cultivation and sale, or that it has objected to any failure on the part of the agent to keep a separate account of these bulb transactions. It has contended throughout this litigation that no trust existed, and that it has no obligation to account. In these circumstances the defendant's good faith in selecting an agent is not a defence.

The conclusion of the master and of the trial judge to the effect that the defendant had failed to show that it had performed its duty as trustee cannot be said to be unjustified. The contention of the defendant that the agreement is unsupported by any consideration was raised by exception to the master's report when the case was here before and has no merit. The trust established is in the nature of an equitable mortgage, 264 Mass. 181, 194, and required no consideration to support it. *Stone* v. *Hackett,* 12 Gray, 227, 230, 231. The contention that the contract is invalid because its terms are uncertain cannot be maintained. The defendant cannot on this ground be relieved from its obligation to account for property delivered to it and for which it assumed responsibility. The defendant contends that the relief granted by the decree is not within the scope of the bill. This contention seems to have been decided adversely to the defendant by what was said in *Knowlton* v. *Fourth-Atlantic National Bank,* 264 Mass. 181, 195, and we are of opinion that the allegations of the bill relating to the contract and to a demand for an accounting and to a refusal to account set out a cause for relief in equity against the defendant. *Spear* v. *Coggan,* 223 Mass. 156, 157.

The conclusions reached in the former decision as to the liability of Charles H. Breck, Joseph Breck and Sons' Company and Breck-Robinson Nursery Company cannot be

reopened. As to these defendants the case is distinguishable in its facts from *Donnelly* v. *Alden,* 229 Mass. 109, and *Tingley* v. *North Middlesex Savings Bank,* 266 Mass. 337. The sum in which the defendant was indebted to the plaintiff, in case it should be found liable, was determined by the former decision, 264 Mass. 181, 197, and is incorporated in the final decree dated December 12, 1929, from which the present appeal has been taken. In this decree interest on the principal sum due was computed from October 31, 1921, to the date of the decree. That decree should now be modified so as to include in addition to the interest therein ordered to be paid interest on the principal sum of $9,798.89 from December 12, 1929, the date of that decree, to the date of final decree after rescript, and as so modified is affirmed with costs.

*Ordered accordingly.*