FRANKLIN A. PACKARD & others *vs.* OLD COLONY
RAILROAD COMPANY.

Plymouth.   January 20, 1897. — February 27, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Deed — Trust — Cemetery Corporation — Legality of Organization — Presumption — Lapse — Title — Dissolution — Land Damages — Parties — Evidence.*

A deed of land recited that, in consideration of a certain sum paid by three persons named, "a committee of and in behalf of" a certain cemetery corporation, the grantor conveyed to such persons, "for the use and behoof of said corporation" the land to be held "in behalf of the said corporation, to their use and behoof forever"; and that the land was free from encumbrances, "except that the ground shall never be used for other purposes than as a cemetery." *Held*, that the deed was to be construed as a deed in trust for the corporation, and conveyed a fee. though no words of limitation to heirs were used.

No particular words are required to create a trust; and the absence of the words " in trust" or " trustees " does not negative a trust.

The St. 1841, c. 114, provided that any ten or more persons might organize as a corporation for the purpose of establishing a cemetery, in the same manner that religious societies were authorized to organize under Rev. Sts. c. 20. By the latter statute religious societies containing ten or more qualified voters might organize as a corporation in the manner specified. *Held*, that, in the absence of a provision requiring the presence of any particular number of persons at the first meeting, the fact that eleven persons signed the application for a meeting to organize a cemetery corporation, although they did not all attend the first meeting, would warrant the assumption that the corporation was legally organized.

The presumption of regularity extends to the proceedings in the organization of a corporation.

If a corporation to which land was conveyed has lapsed, mere possession in the heirs of the grantor is not sufficient to show title in them.

Where land is conveyed in trust for a cemetery corporation, whose records show that deeds of many burial lots were given for several years, and interments were made, and the land had not ceased to be used as a cemetery, the corporation is not dissolved by the omission to choose officers and to hold meetings; nor will the title to the land revert to the original grantor without due proceedings had for that purpose.

If land is conveyed in trust for a cemetery corporation, the trustees are the proper parties to bring a petition for a jury to assess the damages caused by a railroad corporation taking a portion of the land.

Ancient books, purporting to be the records of a cemetery corporation, produced from the custody of the last secretary of the corporation, are competent evidence upon the trial of a petition for an assessment of damages caused by the taking of land conveyed in trust for the corporation by the heirs of the grantor claiming title thereto.

PETITION to the Superior Court, by Franklin A. Packard, Lilian F. Packard, and Frances B. Packard, for a jury to assess the damages caused by the taking by the respondent of the petitioners' land in Brockton, and also the damages alleged to have been caused by such taking to the petitioners' adjoining land. Trial in the Superior Court, before *Braley,* J., who reported the case for the determination of this court, in substance as follows.

It appeared that the land taken, together with the land adjoining it, was owned in fee by Charles Packard prior to December 20, 1848, and formed a part of his cultivated farm; that Charles Packard died in 1851, and left his son, Charles T. Packard, as his sole surviving heir; and that Charles T. Packard died in 1874, and left as sole surviving heirs his children, Franklin A. Packard and Lilian F. Packard, and his widow, Frances B. Packard, the present petitioners.

On December 20, 1848, Charles Packard executed a deed of the land in question, which recited that, " in consideration of two hundred and twenty dollars, paid by Sidney Perkins, Hiram Atherton, and L. F. Charles Loomis, . . . a committee of and in behalf of Village Cemetery, a corporation," the grantor conveyed " to the said Perkins, Atherton, and Loomis, for the use and behoof of said corporation, a lot of land . . . containing seven acres more or less, in which two acres lying in the northwesterly part are the free and unqualified gift of the said Charles Packard "; that the granted premises were to be held " in behalf of the said corporation, to their use and behoof forever "; that they were free from all encumbrances, " except that the ground shall never be used for other purposes than as a cemetery "; and that the grantor would warrant and defend the same to the grantees " in behalf of the said corporation."

The petitioner Franklin A. Packard testified, in substance, that his father, Charles T. Packard, went upon the premises at various times between 1863 and 1867, fixed the fence, broke off twigs, tossed off stones " and such things as that to make the land more presentable "; that the witness went upon the land in 1879, 1880, and 1883, claiming it as his " mentally " and believing that he owned it, and cleared away any obstructions there, such as broken bottles and glass, and fixed up the fences;

that all this time the land had been used as a cemetery; that he knew of the " Village Cemetery"; and that, in 1883, under the advice of counsel, he notified the " Village Cemetery" that he claimed the land as his own.

The respondent, against the objection and subject to the exception of the petitioners, introduced in evidence the record book and the account book of the " Village Cemetery."

The petitioners objected to these books as incompetent and immaterial, but admitted that they were the books of the association claiming to be incorporated under the name of the " Village Cemetery."

From the record book it appeared that on February 5, 1848, eleven men desirous of organizing themselves as a corporation to procure a cemetery under the act of March 17, 1841, signed a petition to a justice of the peace to issue a warrant to one of them to call a meeting of the subscribers on February 16, to adopt by-laws and such other measures as might be necessary to accomplish the proposed object of procuring a cemetery; that the justice issued his warrant to this effect to Edward S. Packard, who made his return thereon February 9; and that on February 16 a meeting was held, at which a secretary, president, and treasurer were chosen, and a committee appointed to draft a constitution and by-laws; but there was no record of the number present. Subsequently, and at varying intervals up to April 20, 1854, sixteen meetings were held, at one of which, on October 31, 1848, the name was chosen of " Village Cemetery."

On February 20, 1883, a justice of the peace directed Amasa Edson " to notify and warn all the proprietors of ' Village Cemetery,' so called, to meet" on March 8, at a place named, " for the purpose of forming themselves into a corporation, then and there to act on the following articles, to wit: 1st. To choose a secretary. 2d. To choose all other necessary officers for said corporation. 3d. To adopt by-laws for said corporation. 4th. To prescribe the method of calling future meetings"; and Edson made due return of the warrant on March 7, 1883.

A meeting was held on March 8, 1883, and, a communication of the Packard heirs being read, the president was authorized to obtain counsel. On March 22, 1883, another meeting was held,

and, after a discussion as to the title to the premises, H. A. Ford was authorized to take legal advice, and a request was sent to the register of deeds to send a copy of the deed of the land. The next meeting was on April 27, 1883, when authority was given Ford to take further legal advice. The next meeting was on May 25, 1883, when the legality of the original corporation was called into question on the ground of the number of members present at the first meeting, and the secretary was authorized to take legal counsel. The next meeting was on June 29, 1883, when a report was read that, after the advice of counsel being taken, there was a possibility that an insufficient number was present at the first meeting. The next meeting was held on August 7, 1883, when it was suggested that the Legislature be petitioned to re-establish the corporation. Another meeting was held on November 6, 1883, but nothing was done. The last meeting was held on December 18, 1883, when nothing was done, except to vote an adjournment to the first Tuesday in September, 1884.

The records also showed that deeds of twenty-nine burial lots were given from 1849 to 1854. Thaddeus E. Gifford, a witness called by the respondent, testified that he had known of this land being used as a cemetery for over forty years, and gave the names of various persons, including Charles Packard, who he knew had been buried there; and that he obtained the books of the " Village Cemetery " from the widow of Henry M. Littlefield, the last secretary of the corporation.

The judge ruled that the petitioners had not shown any right or title in the land, the taking of which would entitle them to recover any damages.

If, upon the evidence reported, the petitioners have any right or title in the land upon which they are entitled to have damages assessed, the cause was to be remanded for such assessment; otherwise, the petition was to be dismissed.

*H. N. Shepard,* for the petitioners.

*J. H. Benton, Jr.,* for the respondent, submitted the case on a brief.

ALLEN, J. The petitioners contend that the deed by their ancestor was governed by the statute of uses, and that there was no legally existing cemetery corporation, and therefore the

deed was ineffectual for want of an existing *cestui que use ;* or, if otherwise, that at any rate it conveyed no more than a life estate, leaving a reversion in the grantor's heirs.

The deed on its face shows a clear intention that the estate granted should not be limited to the lives of the three persons named as grantees. The purpose was that the land granted should be used for burial purposes by the corporation called the " Village Cemetery." Though the word " heirs " is not found in the habendum, it is recited that the granted premises are to be held, " in behalf of the said corporation, to their use and behoof forever." In the covenant against encumbrances, a provision is inserted, " except that the ground shall never be used for other purposes than as a cemetery." In the granting part of the deed it is also stated that two acres are the free and unqualified gift of the grantor.

It is well settled that deeds are to be so construed as to give effect to them according to the intention of the parties where that is possible ; and a conveyance may always be construed to be of that kind or species which may be necessary in order to vest the title according to that intention, if such interpretation is not repugnant to the terms of the grant. *Jamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 159, 167. *Chenery* v. *Stevens*, 97 Mass. 77, 86. *Carr* v. *Richardson*, 157 Mass. 576. *Leonard* v. *Southworth*, 164 Mass. 52. Crocker's Notes on Common Forms, 2. It being plain that this deed was intended to be for the benefit and use of the Village Cemetery corporation, it is to be construed as a deed in trust for that corporation. No particular words are required to create a trust. The absence of the words " in trust," or " trustees," does not negative a trust. 2 Washb. Real Prop. (5th ed.) 547. Lewin on Trusts, (7th ed.) 98, 118. And as the purposes of the trust require a legal estate in the trustees for a period beyond their own lives, they will take a fee though no words of limitation to heirs were used. *Cleveland* v. *Hallett*, 6 Cush. 403. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. *Packard* v. *Marshall*, 138 Mass. 301. *Stanley* v. *Colt*, 5 Wall. 119, 168. 2 Washb. Real Prop. (5th ed.) 537.

The petitioners, however, contend that the Village Cemetery was never legally organized as a corporation, and that therefore the deed was ineffectual to convey any title. There

can, however, be no doubt that the Village Cemetery was a corporation *de facto*, and as the petitioners' grantor acted on the assumption that it was a corporation, and so described it, and received money which probably came from its funds as the consideration of the deed, it is at least doubtful if it is now open to the petitioners to deny the due and legal organization of the Village Cemetery as a corporation. But it is not necessary to rest upon this ground, as there is sufficient evidence that it was legally organized.

The chief objection to the regularity of its organization rests on the ground that the records do not show in express terms that ten persons were present at the first meeting. By St. 1841, c. 114, § 1, under which the action was had, "Any ten or more persons may organize as a corporation for the purpose of procuring, establishing, and preparing a cemetery or burial place for the dead, in the same manner that religious societies are authorized to organize by the provisions of the twentieth chapter of the Revised Statutes." Section 2 provides that, "when such persons are organized as aforesaid, they shall become a corporation," etc. Referring now to the Revised Statutes, c. 20, we find the following provisions:

"Sect. 26. Any parish, which, from the want of officers, or any other cause, may be unable to assemble in the usual manner, and any religious society that is not incorporated, provided they contain respectively ten or more qualified voters, may organize themselves as a corporation, in the manner and for the purposes expressed in the following sections.

"Sect. 27. Any justice of the peace for the county in which such parish or religious society may be, upon application in writing by any five or more of the qualified voters thereof, may issue his warrant for calling a meeting of the same.

"Sect. 28. The warrant shall state the objects of the meeting, and shall be directed to some one of the applicants therefor, requiring him to warn the qualified voters of the parish or society to meet at such time and place as shall be appointed in the warrant; and upon due return thereof the same justice, or any other justice of the peace for the county, may preside at such meeting, for the choice and qualification of a clerk, who shall enter at large upon the records of the parish or society the pro-

ceedings had in the organization thereof; and the parish or society may thereupon proceed to choose a moderator, and to do all such other things as parishes are by law authorized to do at their annual meetings. . . .

"Sect. 29. Every parish and religious society, organized as provided in the three preceding sections, shall become a corporation."

It will be seen that there is no provision in the statutes requiring the presence of any particular number of persons at the first meeting. Eleven persons signed the application, and thus expressed their wish and intention to be members of the corporation. This was a proceeding analogous to the signing of the articles of agreement, which was deemed essential in the case mostly relied on by the petitioners. *Utley* v. *Union Tool Co.* 11 Gray, 139. Having done this, it was not necessary that all should attend the first meeting.

Moreover, even if it were necessary for ten to be present, there would be a presumption that this requirement had been complied with. The presumption of regularity extends to the proceedings in the organization of corporations. In *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282, 287, it was said: "The maxim of law is, that all things shall be presumed to have been rightly and correctly done, until the contrary is proved. This maxim is stated and explained, and many instances given of its application to corporations, and to acts and doings of their members, officers, and agents, in *Bank of United States* v. *Dandridge*, 12 Wheat. 64, 70. As the corporation could not proceed lawfully until duly organized, and as they did proceed to act as a corporation, this presumption has its effect." This doctrine is often applied, and it is to be assumed that ten persons were present at the first meeting, if that number was necessary. *Wallace* v. *First Parish in Townsend*, 109 Mass. 263. *Platt* v. *Grover*, 136 Mass. 115. *Commonwealth* v. *Carr*, 143 Mass. 84. *Commonwealth* v. *Woelper*, 3 S. & R. 29. *Grays* v. *Lynchburg & Salem Turnpike Co.* 4 Rand. 578. *Lauderdale Peerage*, 10 App. Cas. 692.

The petitioners also contend that, if any title passed by the deed, the corporation has lapsed, and upon such lapse mere possession in the petitioners is sufficient, — meaning, we suppose,

sufficient to show title in them. No authority is cited in support of this proposition, and we are aware of none which supports it. The case does not fall within the doctrine that when the purposes of a trust have failed, or have been completely performed, the trustees then hold the estate for the benefit of the heirs at law, as a resulting trust, and are answerable to them for it upon proper proceedings. *Packard* v. *Marshall*, 138 Mass. 301. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. The purposes of this trust have not failed, and have not been completely performed. The records show that deeds of twenty-nine burial lots were given from 1849 to 1854, interments were made, and the land had not ceased to be used as a cemetery. The corporation was not dissolved by the omission to choose officers, and to hold meetings; nor would the title to the land revest in the original grantor, without some due proceedings had for that purpose. *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49. *Heard* v. *Talbot*, 7 Gray, 113, 119. *Briggs* v. *Cape Cod Ship Canal Co.* 137 Mass. 71. The trustees were the proper parties to bring this petition. *Davis* v. *Charles River Branch Railroad*, 11 Cush. 506. *Howe* v. *Ray*, 110 Mass. 298.

The records of the corporation were competent evidence. *King* v. *Little*, 1 Cush. 436. This indeed is not now controverted.

In the recent case of *Hopkins* v. *Grimshaw*, 165 U. S. 342, which bears a resemblance to the present case in some of its aspects, a resulting trust in favor of the grantor and his heirs was declared to exist. But in that case the society which for a time maintained the burial ground was not incorporated, and it was practically dissolved and extinct, and the land had ceased to be used for burial purposes, the bodies all having been exhumed and removed to other cemeteries.

*Petition dismissed.*