## LOIS C. SIMONDS vs. LOTTIE J. SIMONDS & others.

Hampden. September 22, 1908. — October 19, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Deed*, Construction. *Use. Shifting Use. Words*, " Remainder."

A deed made by one L. S. recited that it was in consideration of $1,000 paid by C. S., the son of the grantor, and remised, released and forever quitclaimed unto the said C. S. his heirs and assigns certain parcels of land with the buildings thereon. After the description the deed proceeded as follows : " Reserving to myself the right at any and all times to cut and remove from any and all said tracts so much of the wood and timber growing thereon as I shall from time to time see fit and retain the same to my own use. To have and to hold the afore-granted premises to the said C. S. during the term of his natural life remainder to such of the children of said C. S. as shall arrive at the age of twenty-one years their heirs and assigns, to their use and behoof forever. So that neither I the said L. S. nor my heirs, nor any person or persons claiming from or under me or in the name, right or stead of me or them by any way or means, have any estate, right title or interest of in and to the aforesaid premises with the appurtenances except as aforesaid." C. S. died leaving five children, of whom two were of age and three were minors. *Held*, that the deed did not create a contingent remainder in such children of C. S. as should arrive at the age of twenty-one years, but expressly declared the intention of the grantor to part with all his interest in the property except the reservation of the right to cut wood, and that the intention of the grantor would be carried into effect by treating the deed. as a conveyance to uses, that the fee vested in C. S. and his heirs, first for the use of himself during his life, and then for the use of such of his children as should attain the age of twenty-one years, and that, when all of this class had been determined finally, the use would shift to them in fee and be executed by the statute of uses. *Held, also*, that the word "remainder " in the habendum clause did not prevent this construction of the deed, the whole clause taken together showing that the word was not used in its technical sense.

PETITION, filed in the Land Court on October 29, 1906, for the registration of title to certain real estate in the town of Ludlow, the petitioner claiming title under conveyances, through a third person, from James L. Simonds and Frederick W. Simonds, the two sons of Charles A. Simonds.

The respondents were Jennie E. (Simonds) Bishop, Gertrude M. Simonds and Lottie J. Simonds, the three daughters of Charles A. Simonds, all of whom were minors at the date of the death of their father, although Jennie E. Simonds, after-

wards Jennie E. Bishop, had become of age when the petition
was filed. Both the petitioner and the respondents claimed title
under a deed from Lucius Simonds to Charles A. Simonds dated
September 9, 1886.

In the Land Court the case was heard by *Davis,* J. The
material portions of the deed in question as well as the other
material facts which appeared in evidence are stated in the
opinion.

The petitioner asked the judge to rule that she had a title in
fee simple to the premises described in her petition. The judge
refused so to rule, and ruled that the petitioner had not, under
the deed from Lucius to Charles A. Simonds and the subsequent
deeds from James L. and Frederick W. Simonds, title to a legal
estate in fee simple to the premises described in her petition. He
dismissed the petition ; and the petitioner alleged exceptions.

*F. H. Stebbins,* for the petitioner.

*J. H. Reilly,* for the respondents.

Rugg, J. In 1886 one Lucius Simonds, the grandfather of
the respondents, made a deed of certain land to his son, Charles
A. Simonds. The deed recited as the consideration $1,000. The
granting clause of the deed was as follows : " I . . . do hereby
remise, release, and forever quitclaim unto the said Charles A.
Simonds his heirs and assigns." After a description of the
land, comes the other material language, namely : " Reserving
to myself the right at any and all times to cut and remove
from any and all said tracts so much of the wood and timber
growing thereon as I shall from time to time see fit and re-
tain the same to my own use. To have and to hold the afore
granted premises to the said Charles A. Simonds during the
term of his natural life remainder to such of the children of
said Charles A. as shall arrive at the age of twenty-one years
their heirs and assigns, to their use and behoof forever.

So that neither I the said Lucius Simonds nor my heirs, nor
any person or persons claiming from or under me or in the name,
right or stead of me or them by any way or means, have any
estate, right title or interest of in and to the aforesaid premises
with the appurtenances except as aforesaid."

At the time of the execution of this deed Charles A. Simonds
was living on said land with his wife and one child, the respond-

ent Jennie. His two sons, James L. and Frederick W. were not then twenty-one years of age, and were not living at home. Charles A. Simonds died on February 2, 1902, leaving as his only children said two sons, both of whom were then over twenty-one years of age, and three daughters, Jennie E., Gertrude M. and Lottie J., all of whom were then minors. No child deceased before his death had attained the age of twenty-one years. Jennie E. had become of age when this petition was brought. After the death of Charles A. Simonds all of the interest of James L. and Frederick W. in the real estate was conveyed through a third person to the petitioner.

The question is as to the meaning of the deed of Lucius Simonds. A cardinal rule in the interpretation of conveyances is that every deed should be so construed as to give effect to the intent of the parties, unless inconsistent with some rule of law or repugnant to the terms of the grant. *Packard* v. *Old Colony Railroad,* 168 Mass. 92. The first step then is to ascertain the meaning of the words used in the deed. In our present republican civilization, where primogeniture does not prevail, the mind does not readily adjust itself to a purely arbitrary preference of older to younger children. In the absence of some particular reason, the custom of people, as well as the provision of the statutes, is for an equal division among children. To the ordinary understanding the meaning conveyed by the language of the habendum clause is that the son is to have an estate for life, and that thereafter all his children, grandchildren of the grantor, who reach the age of twenty-one years, regardless of the time when any one of them may attain majority, shall share equally. If after the words, "age of twenty-one years," there had been inserted the words, "whether before or after the death of the said Charles A.," there could be no possible dispute as to the meaning of the grantor. Yet these words only accentuate the meaning which the expression, actually employed, conveys in the common conception of mankind. One way to test the meaning of the language used is to suppose that, immediately after the delivery of the deed, Charles A. Simonds had died. If this event had thus happened, there would then have been no one of his children of a sufficient age to become immediately entitled to the estate. If it be assumed that a con-

tingent remainder is created, in the case supposed it must fail and the estate revert, for the reason that a contingent remainder must take effect immediately upon the termination of the prior estate, or fail altogether. It is plain, therefore, that the deed cannot be construed as creating a contingent remainder in such children of Charles A. Simonds as shall arrive at the age of twenty-one years, without wholly defeating, in the contingency suggested, the intent of the grantor. Another criterion of the signification of the words is to ascertain how they would be interpreted if found in a devise to trustees. No doubt can be entertained that in such an instrument it would be held that the children who reached majority, either before or after the termination of the life estate, would take. *Astley* v. *Micklethwait*, 15 Ch. D. 59. But further language of the deed is decisive that it was not intended to create a contingent remainder. The grantor, in the body of the instrument, at the close of the description, reserves to himself for his life the right to cut wood and timber on the granted premises, and, as a part of the habendum clause, expressly states that neither he nor those claiming under him by grant or descent have " any estate, right, title or interest of in or to the aforesaid premises with the appurtenances except as aforesaid." The position and subject matter of this clause show that it refers only to the reservation excepted out of the conveyance and immediately preceding the habendum clause. Hence the intent of the grantor is made clear by emphatic phrase, that no possibility of reversion is left in himself. But if it be held that a contingent remainder was created by the deed, and Charles A. Simonds had died before any of his children had attained majority, there would then be a revesting of the entire estate in the grantor, for the reason that it would not be possible for the remainder to take effect instantly on the termination of the prior estate. But this would be directly contrary to the express terms of the deed.

It is perhaps possible that the intent of the grantor may be given effect by holding that the deed created a vested remainder in all children of Charles living at the delivery of the deed, subject to open and let in after born children, and to be divested by death during minority. *Riley* v. *Garnett*, 3 DeG. & S. 629.

*Bromfield* v. *Crowder*, 1 B. & P. 313. *Edwards* v. *Hammond*, 3 Lev. 132. *Musket* v. *Eaton*, 1 Ch. D. 435. *Jull* v. *Jacobs*, 3 Ch. D. 703. *Pearks* v. *Moseley*, 5 App. Cas. 714. *Blanchard* v. *Blanchard*, 1 Allen, 223. See however *Inman* v. *Rolls*, [1893] 3 Ch. 518. But it is not necessary to place the decision upon this ground or to strain the language from its natural import to effectuate the intent manifested by the instrument. Nor are we required to discuss *Festing* v. *Allen*, 12 M. & W. 279, and analyze the many cases in which it has been followed or criticised. See *Cunliffe* v. *Brancker*, 3 Ch. D. 393; *Browne* v. *Browne*, 3 Sm. & G. 568; *Patching* v. *Barnett*, 49 L. J. Ch. 665.

On other reasoning the intent of the grantor can be carried into effect.

The granting clause of the deed is in the ordinary form of a quitclaim deed, and is adapted to a conveyance to uses. It is to " Charles A. Simonds his heirs and assigns." This conveyed the fee. The habendum clause grants a life estate to Charles A. Simonds with an estate in fee to such of his children as attain majority. This is an attempt to create one estate in fee simple to commence in the future at the time of an occurrence not sure to come to pass, that is on their reaching twenty-one, upon another estate in fee simple. This can be done by way of a use. No set form of words is required in a conveyance to uses, and the present deed is not wholly inapt, even if this was the precise intent of the draftsman. *Leonard* v. *Southworth*, 164 Mass. 52. *Thatcher* v. *Omans*, 3 Pick. 521. *Carr* v. *Richardson*, 157 Mass. 576. The use was not immediately executed by the statute of uses, for the reason, as before pointed out, that the grantor contemplated the possibility of a gap intervening between the termination of the life estate in his son and the commencement of the fee in his grandchildren. It was possible that none of the latter might have been in position to take at the termination of the life estate. It would then have operated probably as a springing use, not coming into existence in derogation of any other estate, nor necessarily at the termination of the first estate created by the deed, but upon the happening of an independent though uncertain future event, namely, when any of the class named reached the age answering to the description of the *cestui que use* and were thus able to take. It has turned out to be the fact

that it was not possible, at the termination of the life estate, to determine all who might ultimately answer the terms of the description, although two were then certain. It must operate therefore as a shifting use. The fee vested in Charles A. Simonds and his heirs and assigns to hold first for the use of Charles A. Simonds during his life, and then for the use of such of his children as should attain majority. When all who constitute this class are finally determined, the use shifts to them in fee, being executed by the statute of uses. *Second Congregational Society* v. *Waring*, 24 Pick. 304. *In re Lechmere*, 18 Ch. D. 524. *Miles* v. *Jarvis*, 24 Ch. D. 633. *Dean* v. *Dean*, [1891] 3 Ch. 150. *Blackman* v. *Fysh*, [1892] 3 Ch. 209. *In re Wrightson*, [1894] 2 Ch. 95.

There is nothing at variance with this view in the well settled rule that a limitation, if it can so operate, is to be construed as a remainder, and not as an executory devise, even if the rule be conceded to apply with equal force to springing and shifting uses. That rule is adduced to give effect to the intent of the maker and carry out the terms of the instrument. Its invocation here could only thwart that intent and defeat those terms. Hence it has no application. Nor is the use of the word " remainder " in the habendum clause decisive that a technical remainder was intended. The whole clause must be construed together, in order to ascertain its sense, and its true significance must be declared even though a popular rather than a strict meaning be attached to particular words. *Dole* v. *Keyes*, 143 Mass. 237.

*Exceptions overruled.*