FRANCIS P. NASH & another, trustees, *vs.* ELIOT STREET GARAGE COMPANY.

Suffolk.    May 17, 1920. — June 22, 1920.

Present: RUGG, C. J., CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Way*, Private: extinguishment. *Easement. Deed*, Construction.

The owners of Boylston Place, a private way, which in 1853 was in a small and exclusive residential neighborhood in close proximity to the business section of Boston and ran southerly from Boylston Street toward, but not to, Eliot Street and was closed at the Eliot Street end, conveyed to the owner of land on Eliot Street and to his heirs and assigns "but as appurtenant, however, to that portion of his estate on Eliot Street in Boston which lies north of a line which is forty feet distant northerly from and parallel to the north line of said Street, a free right of way and passage in common with them [the grantors] and their heirs and assigns over Boylston Place, so called, to and from that portion of his said estate which is above specified to Boylston Street the Carriageway & the Sidewalks in said place to be used as such and in no other manner and as the same now exist and to be continued of uniform width by said" grantee. Conditions of the conveyance were that the grantee should extend the way to the point forty feet from Eliot Street and there should build a brick building effectually blocking any use of the way from Eliot Street "or any other street or place," that he should erect brick dwelling houses on each side of the extension of the way of the same class as those then on the way, that, until such dwelling houses on one side of the way should be ready for occupancy, a brick wall then at the southerly end of the way should not be removed and a fence should be maintained in front of each vacant lot of the grantee, "so as effectually to exclude all passage to or from the same over Boylston Place, so that none but the occupants of the new buildings, so to be erected on said Place shall ever be able to avail themselves of any of the privileges hereby conveyed." Such brick dwelling houses were erected. After a successor in title of the grantor of the easement had registered his title subject to the rights given by the indenture, the brick dwelling houses erected by the grantee were torn down by his successor in title, whereupon the certificate holder filed a petition under R. L. c. 128, § 107, to amend the certificate by striking out a provision that the grantee's successor was entitled to any right of way in Boylston Place. *Held*, that

(1) By the last clause quoted above, the right of way expressly and intentionally was limited to the occupants of the dwelling houses to be erected;

(2) The dwelling houses having been destroyed, the right of way was extinguished;

(3) The last clause quoted above could not reasonably be construed as a temporary provision in regard to fencing lots which for a short period might be vacant before the houses were built.

A grammatical construction of a clause in a deed will not control the manifest intention of the parties as expressed in the whole instrument if that intention is consistent with the rules of law.

PETITION, filed in the Land Court on December 3, 1919, under R. L. c. 128, § 107, for the amendment of a certificate of the title to land on Boylston Place in Boston, which stated that "So much of the above described land as is included within the limits of what is shown as Boylston Place on said plan, is subject to the rights of way and drainage set forth in an indenture between John James Dixwell et als., dated September 30, 1853, duly recorded in Book 654, Page 90, in favor of said Apsey land, which is the land shown as such on a plan filed in the Land Registration Office in Case No. 5991." The "Apsey land," the petitioners alleged, was that formerly owned by the Brackett to whom rights of way were given by the indenture described in the opinion. After the decree, upon which the petitioners' certificate of title was founded, was entered, the "Apsey land" was conveyed by mesne conveyances to the respondent. The amendment prayed for was the striking out, from that portion of the words above quoted, of the words, "way and" before the word "drainage," and of the words, "in favor of said Apsey land, which is the land shown as such on a plan filed in the Land Registration Office in Case No. 5991."

The title to the "Apsey land" originally was registered by a decree following the decision reported in *Apsey* v. *Nash*, 229 Mass. 77, wherein the indenture, which is the basis of this decision, also was considered; and the petitioners herein alleged that that decree and the respondent's "certificate founded thereon, do not register or mention the easement above described as appurtenant thereto, and no amendment of said certificate is necessary."

In the Land Court the petition was heard by *Davis*, J. Material facts found by him are described in the opinion.

At the close of the evidence, the respondent asked for the following rulings:

"1. That the indenture between John James Dixwell et al. and Jeffrey R. Brackett, dated September 30, 1853, created an easement for the benefit of said Brackett's land.

"2. That the easement created by said indenture was appurtenant to said land of Brackett and as an appurtenant right passed with the conveyance of said Brackett's land.

"3. That the destruction of the buildings on the premises referred to in said indenture did not terminate said easement.

"4. That the language of said indenture is not such as to limit the duration of said easement and was not an easement established for the personal benefit of said Brackett.

"5. That so much of the respondent's land as is described or referred to in said indenture has the benefit of said easement and that said easement has not ceased to exist and is still a right appurtenant to said respondent's land."

The rulings were refused, and a decree was ordered amending the certificate as prayed for; and the respondent alleged exceptions.

The case was submitted on briefs.

*Roland Gray, A. Boyden & W. M. Quade,* for the respondent.

*G. L. Wilson,* for the petitioners.

*C. S. Rackemann & J. Sargent,* by leave of court filed a brief on behalf of the Tavern Club as *amicus curiae.*

CROSBY, J. This is a petition in the Land Court under R. L. c. 128, § 107, to amend the certificate of title of the petitioners by striking therefrom those parts that subject their land to a right of way over Boylston Place, so called, in Boston, and which way is alleged by the respondent to be appurtenant to its land.

The instrument creating the right of way is in the form of an indenture, dated September 30, 1853, between Dixwell and others and Brackett. Boylston Place is a private way running southerly from Boylston Street between, and in the same general direction as, Tremont and Carver streets. The respondent, who is the successor in title to Brackett, is now the owner of the land at its lower or southerly end; upon this land ten brick dwelling houses stood which abutted on the way, five on each side. The petitioners, who are successors in title to Dixwell and others, own a parcel of land which abuts on Boylston Place at its entrance from Boylston Street and includes part of the fee in the way.

By the indenture Dixwell and others, the grantors, remised, released and forever quitclaimed to Brackett "and his heirs and assigns but as appurtenant, however, to that portion of his estate on Eliot Street in Boston which lies north of a line which is forty feet distant northerly from and parallel to the north line of said Street, a free right of way and passage in common with them and their heirs and assigns over Boylston Place, so called, to and from that portion of his said estate which is above specified to Boylston

Street the Carriageway & the Sidewalks in said place to be used as such and in no other manner and as the same now exist and to be continued of uniform width by said Brackett: — But this conveyance is made upon the following conditions:" then follow three conditions. The first provides in part that Boylston Place is to be extended to a line forty feet distant from Eliot Street at the sole cost of Brackett, but is never to be continued through to Eliot Street; that Brackett will build a brick building opposite the end of the way, fronting on Eliot Street, and not more than forty feet in depth, without any opening on to or passageways leading therefrom into Boylston Place, "the object being to prevent as far as possible a street or common passageway from being, ever, made over Boylston Place to connect Boylston Street with Eliot Street, or any other street or place." The second condition provides that Brackett shall lay a drain through Boylston Place and across his land to Eliot Street for the use of the estates of the other abutters on the place. The third condition is as follows: "that said Brackett or his representatives shall also erect not more than ten brick dwelling houses fronting on said place as continued, five on each side as of good style and of such class as shall accommodate occupants like those now occupying said place, that no materials, for building the same, shall be carried over the place as it now exists and that until such houses are erected on one side of the place as continued and fit for occupancy, the brick wall at the foot of the present place is not to be removed: And as all the houses may not be immediately erected the said Brackett or his representatives shall before every vacant lot erect and maintain a substantial fence, so as, effectually, to exclude all passage to or from the same over Boylston Place, so that none but the occupants of the new buildings, so to be erected on said Place shall ever be able to avail themselves of any of the privileges hereby conveyed." The ten brick dwelling houses were erected by Brackett shortly after 1853, and recently were torn down voluntarily by the respondent.

The question is, what is the meaning of the language used in the indenture creating the right of way. Was it a right of way for the benefit solely of the occupants of the dwelling houses to be erected, and which came to an end when the houses were demolished? Or was it in effect an absolute grant of a way appurte-

nant to the land on which the houses stood? The determination of the question depends on the intention of the parties as found in the words used to express their meaning as applied to the subject matter. *Codman* v. *Evans*, 1 Allen, 443. *Simonds* v. *Simonds*, 199 Mass. 552. *Cotting* v. *Boston*, 201 Mass. 97.

The record shows that in 1853, when the easement was created, Boylston Place was a small and exclusive residential neighborhood in close proximity to the business section of Boston, and that Eliot Street was of a different character. The judge of the Land Court found that "the dominant intention of the parties was to preserve the exclusive character of the small residential locality then existing at Boylston Place. The confines of that locality were to be enlarged by the addition of a strip of land from the south, which was to be occupied by brick dwelling houses 'as of good style and of such class as shall accommodate occupants like those now occupying said place.' That was the only specification. It was the character of the occupants with which the parties were chiefly concerned, and the rights of way were to be so limited by physical barrier that 'none but the occupants of the new buildings so to be erected on said Place shall ever be able to avail themselves of any of the privileges hereby conveyed.'"

The cases heretofore decided by this court relating to equitable restriction are analogous in principle to those relating to easement: each is a property right in the estate to which it is appurtenant. *Peck* v. *Conway*, 119 Mass. 546. *Sprague* v. *Kimball*, 213 Mass. 380, 382. *Riverbank Improvement Co.* v. *Chadwick*, 228 Mass. 242.

It is apparent from the language of the indenture that the petitioners' predecessors were desirous there should never be any passageway between Boylston and Eliot streets through Boylston Place. But that is not all they sought by the indenture to accomplish. They also meant to designate and define the character of the occupants when they provided that the houses to be erected should be "as of good style and of such class as shall accommodate occupants like those now occupying said place." Manifestly in the extension of the way to the south the grantors intended to continue to preserve and protect the neighborhood for residential purposes by providing that the occupants of the houses to be built should be of the same class as those living there

at that time.  While in the granting clause of the indenture the right of way was conveyed in fee and appurtenant to the land, we are of opinion that by the last clause before the testimonium clause it was expressly and intentionally limited to the occupants of the ten houses to be erected.  When it was provided that none but the occupants of the new buildings so to be erected should ever be able to use the right of way, it is plain it was the intention of the grantors that the buildings referred to were the ten brick buildings to be erected by Brackett and that when by the destruction of those buildings there could be no more occupants, the right of way would be extinguished.  In *Cotting* v. *Boston, supra,* the conveyance was of a lot of land "with the store thereon standing . . . with a privilege in the passage of the adjoining store, for the purpose of passing and repassing to the chambers of the store hereby conveyed."  It was held that the privilege of passage ceased when the building upon the land conveyed was destroyed and that it did not attach to the land of the dominant estate.  *Boston Baptist Social Union* v. *Boston University,* 183 Mass. 202.  *Welch* v. *Austin,* 187 Mass. 256.

The last clause cannot reasonably be construed as a temporary provision in regard to fencing lots which for a short period might be vacant before the houses were built.  It expressly and intentionally provides that none but the occupants of the new buildings shall ever be able to avail themselves of any of the privileges conveyed under the terms of the indenture.  It is the contention of the respondent that the last clause is a summary of the effect of previous provisions without in any way restricting their scope or adding any new element, that it follows the words "so that" which grammatically construed necessarily introduce a statement of the purpose or effect of the preceding provisions.  We are unable to agree with this contention.  Although in a written instrument the words used ordinarily must be construed in their usual and grammatical sense unless that would lead to some absurdity, repugnance or inconsistency, *Grey* v. *Pearson,* 6 H. L. Cas. 61, 106, *Cotting* v. *Boston, supra,* still a grammatical construction will not control the manifest intention of the parties as expressed in the instrument if that intention is consistent with the rules of law.  *Frost* v. *Spaulding,* 19 Pick. 445, 446.  *Packard* v. *Old Colony Railroad,* 168 Mass. 92, 96.

It is argued by the respondent that to limit the way to the occupants of the buildings erected by Brackett would eventually leave the lot on which they stood without any approach; but that result cannot control the proper construction of the instrument by which the rights of the parties are established. It appears that the buildings which were erected in accordance with the agreement were substantial in character and stood on the land for nearly seventy years, and there is nothing in the record to show that when they were torn down by the respondent they might not have been occupied for residential purposes for an indefinite period.

It results that the respondent's requests for rulings were rightly refused. The decision of the Land Court is affirmed.

*So ordered.*