JOSEPH F. RUGO *vs.* GUIDO L. RUGO & others.

Suffolk. December 6, 1949. — April 5, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Trust,* Express trust: what constitutes; Parol trust; Of personal property; Accounting by trustee; Trustee's compensation; Trustee's expenses. *Evidence,* Presumptions and burden of proof. *Equity Pleading and Practice,* Exceptions. *Interest.*

Evidence in a suit in equity did not show to be plainly wrong findings by the trial judge that three stockholders of a corporation, by contributions, established in assistance of the corporation a "fund" which remained the property of the three and was not the property of the corporation and which was in the possession and control of one of them upon an oral trust for the three in proportions equivalent to their stock holdings in the corporation.

In a suit in equity to establish an oral trust of property in the defendant's hands for the benefit of the plaintiff and for an accounting by the trustee, the burden of proving the existence of such trust was on the plaintiff; but, upon its existence being established, the defendant had the burden of proving that he had properly discharged his duties as trustee.

Disadvantageous consequences of a trustee's failure to perform his duty of keeping proper accounts must fall on him in a suit by a beneficiary for an accounting.

An appeal from a final decree in a suit in equity did not open in this court the propriety of a ruling made in the absence of the appellant to which he did not file an exception as prescribed by Rule 72 of the Superior Court (1932).

In a suit in equity for an accounting against a trustee who had failed to keep proper trust accounts, had destroyed records of the trust and otherwise had failed in his duty, it was not error to deny him compensation, nor abuse of discretion to deny him counsel fees.

A trustee, found in an accounting to owe a beneficiary a certain sum, should also pay interest thereon from the date of demand for the accounting.

BILL IN EQUITY, filed in the Superior Court on March 29, 1948.

The suit was heard by *Baker*, J.

*F. T. Leahy*, (*W. B. Shevary* with him,) for the defendant Guido L. Rugo.

*A. F. Bickford*, (*R. C. Sheppard* with him,) for the plaintiff.

WILKINS, J. This is a bill in equity to establish a trust of personal property in the possession of the defendant Guido L. Rugo, as trustee, and to obtain an accounting. Also named defendants are Leonard P. Rugo, a beneficiary, against whom no relief is sought, and National League Baseball Club of Boston, Inc., against which there are prayers for an injunction with respect to matters no longer in issue. From a decree ordering the defendant Guido L. Rugo (hereinafter sometimes called the defendant) to pay to the plaintiff $117,360.04 with interest from November 1, 1945, in the sum of $23,058.81, the defendant appealed. The bill was dismissed as to the other defendants. The judge filed findings and an order for decree. The evidence is reported.

The plaintiff and the two individual defendants are brothers, who were formerly employed by their father in the contracting business. After the father's death they continued the business, which was incorporated in this Commonwealth in 1928 under the name of Rugo Construction Company, Inc., the respective stockholdings being Joseph and Guido each forty per cent and Leonard twenty per cent. Joseph was president, Guido treasurer, and Leonard clerk, and the three were the directors. In 1929 a fund was orally established by the brothers with Guido in charge, but whether it was the same fund as a so called "wage fund" in effect in 1935, or whether it was a trust, and for whose benefit and in what proportions, were among the disputed issues. The judge found that the brothers established the fund "to help out" the company; that the money in the fund was to be kept in cash, and controlled and managed by Guido; that ownership was to be forty per cent each in Guido and Joseph, and twenty per cent in Leonard; that from 1929 on, the

brothers made contributions to the fund, and loans were made to the company, which gave notes payable to Guido; that the money belonged to the brothers and not to the company; that from 1929 until November 1, 1945, the total contributions to the fund were $1,145,037, including the profit from stock transactions; and that the fund was controlled, managed, and held by Guido under an oral trust for the benefit of the three brothers in the above percentages. In 1932 and 1933 when the business of the company fell off, by agreement of the brothers Guido bought and sold stocks, the accounts being in the name of Guido or his wife. The amount of $60,000, accumulated between 1929 and 1932, was used in the stock market between 1932 and 1935, with a resulting profit of $10,269.

In the latter part of 1935 the company resumed its regular construction business and made a large profit. The brothers agreed to draw substantial salaries and bonuses, and to contribute the remaining profits to what was then called a "wage fund," for the use of the company in case of need, to be handled by Guido. The judge found that there was no distinction made by the brothers, "the owners of the 'fund,' between the 'fund' which existed before and [the one which existed] after 1934"; and that Guido handled the "wage fund" in the same manner as he had handled the "fund" from 1929 to 1935. The arrangement was that the company bookkeeper made out checks for the salaries of the brothers, and deposited to the credit of each so much as he was to draw, and the balance was given to Guido to be held in the "wage fund."

In 1941 there was a transfer of $165,000 from notes payable into the capital account of the company, and loans which had been made from the fund to the company were treated as paid. Beginning in 1942 Joseph began to make demands upon Guido "for an accounting of the fund," and made requests for the transfer of his forty per cent interest. In October, 1945, Joseph made demand "for a final accounting," and severed active connection with the company. There followed numerous meetings of Joseph, Guido, and

their representatives. These demands were not met by Guido except as to certain transactions with the National League Baseball Club of Boston, Inc. In 1941 and 1944 $74,175 of the fund had been invested in the capital stock of the baseball club, and all but one of the stock certificates had been taken in the name of Guido, who had possession of them all. On February 6, 1948, Joseph received forty per cent of the stock. On December 19, 1946, and February 28, 1947, respectively, loans of $102,500 and $7,500 had been made to the baseball club, for which notes had been given payable to Guido. During the hearing Joseph received an assignment of forty per cent, or $44,000, of the total of these notes.

The judge found that Guido failed to keep an accurate account of the contributions to, and the disbursements from, the fund between 1929 and 1932, when money was being lent to the company; that he failed to keep an accurate account of the investment in stocks bought and sold by him between 1932 and 1935; that there was great difficulty in determining the exact amount of money in the fund during those periods; that his methods of keeping the accounts were loose, confused, and irregular; that before and after the commencement of the suit, and even after the hearing began, he destroyed records relating to the fund; that, in consequence, the determination of the final account figures was made most difficult; that, in order to determine those figures, there were required the services of certified public accountants employed by both parties during a suspension of the hearing; that Guido did not know what the fund amounted to from 1928 to 1945; that, without consulting Joseph, he subordinated the $110,000 loan from the fund to the baseball club to a note and mortgage of $200,000 of the club held by a bank; that he never rendered Joseph an account when requested to do so; and that he is not entitled to compensation for services rendered as trustee or to counsel fees in this suit.

The details of the judge's findings showing the computation of the amount ordered paid in the final decree appear

in a footnote.[1] There was evidence to support the several items.

·  The defendant's contentions are largely factual and to the effect that some of the judge's findings are plainly wrong. Thus, he contends that there was not one fund, but at least two, one beginning in 1929, and another beginning in 1935; that the company was the beneficiary of the earlier fund; and, seemingly, that there was no trust, but that the defendant was a mere custodian, and not a trustee. These contentions cannot prevail. The existence of a trust does not depend upon the terminology used. *Packard* v. *Old Colony Railroad,* 168 Mass. 92, 96. *Robinson* v. *Cogswell,* 192 Mass. 79, 84. *Sherwin* v. *Smith,* 282 Mass. 306, 311–312. Restatement: Trusts, § 23, comment a; § 24, comment b. Scott, Trusts, §§ 23, 24. In *Attorney General* v. *Bedard,* 218 Mass. 378, 386, it was said, "We cannot doubt that the defendants, the custodians and managers of this fund, are under the same obligations as if they expressly had been made the trustees thereof." If a settlor properly manifests an intention to create a trust, one may be found to exist.

[1] Total contributions to fund . . . . . . $1,145,037 00

Less miscellaneous deductions:
| | | | |
|---|---|---|---|
| Taxes, contributions, expenses . . . | $440,736 | | |
| Loss U. S. Trust stock . . . | 1,131 | | |
| Error . . . . . . | 1,000 | 442,867 00 | |

Balance November 1, 1945 . . . . . . $702,170 00

Less:
| | | | |
|---|---|---|---|
| Rugo Construction Co. . . . | $165,000 | | |
| Baseball club stock and loans . . | 184,175 | 349,175 00 | |

                                                            $352,995 00

Less miscellaneous deductions . . . . . 18,427 40

                                                            $334,567 60

Plus 1946 expenses . . . . . . . 7,250 00

                                                            $341,817 60

Forty per cent to plaintiff . . . . . . $136,727 04

Less sums owed by plaintiff:
| | | | |
|---|---|---|---|
| Loan . . . . . . . | $8,950 | | |
| Hinckley Road property . . . . | 10,417 | 19,367 00 | |

Plaintiff's balance in fund . . . . . $117,360 04

Interest thereon November 1, 1945, to February 9, 1949 . 23,058 81

Amount in final decree . . . . . . $140,418 85

*Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 90. *Levy* v. *Levy*, 309 Mass. 486, 489–490. An express trust in personal property may be created and proved by parol. *Stuck* v. *Schumm*, 290 Mass. 159, 163. *Greeley* v. *Flynn*, 310 Mass. 23, 27. *Russell* v. *Meyers*, 316 Mass. 669, 672. The defendant had title to substantially all the property, and possession and control of it all. Scott, Trusts, § 8. The evidence, which need not be narrated, was ample to support the finding that there was one fund, a trust fund, established in 1929, of which the defendant is the trustee, and of which the brothers are the beneficiaries, interested not equally as alleged in the defendant's answer, but in the proportions of forty per cent each to the plaintiff and to the defendant and twenty per cent to Leonard.

The burden of proving the existence of the trust was upon the plaintiff, but, that being established, the defendant had the burden of showing that he had discharged the duties of trustee with reasonable skill, prudence, and judgment. *Knowlton* v. *Fourth-Atlantic National Bank*, 271 Mass. 343, 350–351. *Chopelas* v. *Chopelas*, 294 Mass. 327, 334; *S. C.* 303 Mass. 33, 35. This included the duty to keep clear and accurate accounts, and the consequences of any failure to comply with this duty must fall upon him. *Akin* v. *Warner*, 318 Mass. 669, 674, and authorities cited.

The defendant concentrates much of his attack upon the finding that the total amount of the fund was $1,145,037. He argues that there was no credible evidence where the fund came from prior to 1934; that the amount contributed by the brothers between 1935 and 1945 was $687,038.54, according to the testimony of the plaintiff's accountant and the defendant's accountant, who worked on the matter during the suspension of the hearing; and that the stock market profit was only $10,269.

The testimony of the accountants was that the contributions between 1935 and 1945 were $751,738.54, of which $64,700 came from a small group of employees, most of whom were relatives of the brothers. There was nothing, however, requiring the judge to find that the brothers are

not the owners of the entire fund, whatever its source. The defendant's answer, moreover, is in substance an admission, binding upon him, of the allegations of the bill that the brothers are the beneficiaries of the whole fund. G. L. (Ter. Ed.) c. 231, §§ 87, 144. *Bancroft* v. *Cook,* 264 Mass. 343, 348. *Alpert* v. *Radner,* 293 Mass. 109, 110–111. *Kneeland* v. *Bernardi,* 317 Mass. 517, 520. The contributions to the fund between 1935 and 1945 in which the brothers alone shared clearly could have been found to be $751,738.54.

As to the contributions before 1935, except for the relatively small item of stock market profit, it is true that no very specific evidence was given. But the defendant's own testimony included a claim for compensation for handling a fund "on that little over $1,000,000." This could have been taken to mean the figure of $1,145,037,[1] as to which there was testimony from the plaintiff that he had obtained from the defendant figures showing contributions to the fund from 1928 to 1945 in this total amount. The judge was not plainly wrong in finding this to be the total amount of contributions. This was a consequence of failure to keep adequate accounts. The defendant's argument would be more impressive were the legal duty of showing the items of the trustee's account upon the beneficiary. In any event, the judge could and perhaps was required to find that the defendant's methods of keeping accounts were loose, confused, and irregular. If anything, his findings on this issue were understatements. It would not be helpful to detail numerous errors and shortcomings of a trustee who kept inadequate records consisting of loose slips of paper and no books, never knew the amount of the fund, kept the fund including the cash in the same safety deposit box with other cash and property not related to the trust, took title to some of the baseball club stock in his own name, became individually the payee of the notes of the baseball club, never adequately accounted, and destroyed

---

[1] In this total, the stock market gain was taken at $12,400, instead of at the $10,269 found by the judge. This variation is offset by the deduction found by the judge of $1,131 for loss on "United States Trust stock" and $1,000 for an error, two undisputed items.

records including those upon which the plaintiff's testimony as to the total contributions to the fund was based.  °

The defendant argues that the trust is irrevocable, "to be terminated only when its objects had been accomplished." Without intimating that this argument is sound, it is enough to say that it is not open to the defendant under his answer. The bill alleges that the purpose of the trust has been completely fulfilled, and nothing remains to be done except for the trustee to make distribution and to account. The defendant's answer, while denying that the fund is a trust, alleges that it "is subject to the right of any of the parties who contributed to the fund to withdraw the balance of their contributions which remained in said fund, after credit has been given for advances made to or in behalf of the persons who wish to withdraw their money."

The defendant, who has not pleaded illegality, states flatly in his original brief that the findings are plainly wrong because "the purpose of the whole scheme whereby the fund was founded and accumulated was illegal." In his supplemental brief he takes the conditional position that "if the plaintiff's claim that moneys taken from the corporation and from the . . . group [of employees] were collected for the use and benefit of the three brothers, then the scheme was illegal." Both contentions are without merit. Plainly neither finding was required. Whatever the alleged illegality, the plaintiff could make out a case without showing it. *Lufkin* v. *Jakeman*, 188 Mass. 528, 532. *O'Gasapian* v. *Danielson*, 284 Mass. 27, 34. *Gerace* v. *Gerace*, 301 Mass. 14, 18–19. *Kerwin* v. *Donaghy*, 317 Mass. 559, 572–573. *Monahan* v. *Monahan*, 77 Vt. 133, 141–142.

The defendant, without directing attention to any specific questions to witnesses, urges generally that there was error in admitting evidence of conversations and documents "between the parties and their counsel . . . although they all related to efforts to compromise the dispute." On the other hand, the plaintiff denies this and argues that the judge could properly find that certain meetings and con-

Rugo *v.* Rugo.

ferences were held for the sole purpose of procuring and expediting an accounting and were not for the purpose of compromising any disputes. If confronted with this issue, we might accept the plaintiff's contention. We cannot, however, regard the defendant's argument as sufficiently definite to prevent the question from being treated as waived. Except for a reference in one of his briefs to an exhibit entitled "Memorandum of settlement accounting on March 20, 1948, by and between Guido L. Rugo and Joseph F. Rugo," which was admitted in evidence without objection, we are not sure precisely what questions to witnesses or items of evidence are referred to. If we understand correctly their identity, none of the questions was the subject of an exception, but all such evidence was admitted de bene. This evidence may have been, as the plaintiff argues, part of a subject matter originally opened up by the defendant. We cannot be certain that much of the same matter was not otherwise admitted in evidence without objection. But the defendant is beset by another difficulty which is insuperable. At the close of the evidence he made a motion to strike out "all the evidence accepted de bene." The only action thereon by the judge appears in the findings as to the purposes of the conferences, contained in his findings and order for decree. There was no compliance by the defendant with Rule 72 of the Superior Court (1932). His appeal from the final decree did not take the place of filing exceptions, under that rule, to rulings made in his absence. G. L. (Ter. Ed.) c. 214, § 25.

Certain minor arguments or suggestions of the defendant merit brief discussion. There was no error in denying the defendant compensation. *Brooks* v. *Jackson*, 125 Mass. 307, 310–311. *Shulkin* v. *Shulkin*, 301 Mass. 184, 193–194. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1, 4. See *Spilios* v. *Papps*, 292 Mass. 145, 147; *Wiley* v. *Fuller*, 310 Mass. 597, 602. Nor was there any abuse of discretion in denying him counsel fees. *Bogle* v. *Bogle*, 3 Allen, 158, 161. *Blake* v. *Pegram*, 109 Mass. 541, 558. *Comstock* v. *Bowles*, 295 Mass. 250, 263. The defendant properly was charged

with interest. *White* v. *Ditson,* 140 Mass. 351, 362–363. *Zak* v. *Zak,* 305 Mass. 194, 197. Restatement: Trusts, § 207. See *Winchell* v. *Plywood Corp.* 324 Mass. 171, 181.

*Decree affirmed with costs.*